427 F.2d 476
 William WATERS and Donald Samuels, each individually and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
WISCONSIN STEEL WORKS OF INTERNATIONAL HARVESTER COMPANY, a corporation, and United Order of American Bricklayers and Stone Masons, Local 21, an unincorporated association, Defendants-Appellees.
 No. 17895.
 United States Court of Appeals, Seventh Circuit.
 April 28, 1970.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Judson H. Miner, Philip B. Kurland, Chicago, Ill., for appellant.
 David A. Copus, Russell Specter, Acting General Counsel, David Cashdan, Washington, D. C., amici curiae.
 Hammond E. Chaffetz, Thomas M. Thomas, George D. Newton, Jr., Thomas A. Gottschalk, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for appellee, International Harvester Co.
 Benjamin L. Jacobson, Marvin Gittler, Chicago, Ill., Asher, Greenfield, Gubbins & Segall, Chicago, Ill., of counsel, for other appellees.
 Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.
 SWYGERT, Chief Judge.
 
 
 1
 This appeal raises important questions concerning the availability and scope of various federal remedies for combating racial discrimination in employment. Plaintiffs, William Waters and Donald Samuels, brought a class action seeking damages and injunctive relief against the Wisconsin Steel Works of International Harvester Company and Local 21, United Order of American Bricklayers and Stone Masons. They alleged that Harvester, with the assistance of Local 21, maintained a discriminatory hiring policy designed to exclude Negroes, including the plaintiffs, from employment as bricklayers at Wisconsin Steel Works. Plaintiffs claimed that these allegations of racial discrimination stated a cause of action under four separate statutes: section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the 1964 Civil Rights Act, 42 U.S.C. § § 2000e to e-15; section 301 (a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a); and the National Labor Relations Act, 29 U.S.C. § § 151 to 167.[1] On the motion of defendants the district court dismissed plaintiffs' complaint. The plaintiffs appeal from the order of dismissal. We reverse and remand for trial.
 
 
 2
 In this appeal we must determine whether plaintiffs have stated a cause of action under any of the statutory grounds cited in their complaint. We treat the district court's dismissal of the complaint as a summary judgment for the defendants and consider the affidavits presented in the district court to supplement the bare allegations of the complaint.[2]
 
 
 3
 The facts as alleged in the complaint and supplemented by affidavits are not in material dispute. Harvester employs over forty-five hundred persons at Wisconsin Steel Works in Chicago, including a small force of bricklayers (less than fifty men). Local 21 is the exclusive bargaining representative for the bricklayers employed by Harvester.
 
 
 4
 The complaint alleges that prior to June 1964 Harvester, with the acquiescence of Local 21, maintained a discriminatory hiring policy which excluded Negroes from employment as bricklayers. During June 1964 five Negroes, including William Waters, were hired as bricklayers. Waters, a member of Local 21, worked in that capacity from June 13, 1964 until he was laid off on September 11, 1964. Nine other bricklayers including all of the Negroes hired in June were discharged at that time.
 
 
 5
 Under the collective bargaining agreement workers achieve seniority only after ninety consecutive days on the job. Thus all of the Negro bricklayers hired in June 1964 worked as probationary employees and did not acquire seniority and the accompanying right to preferential reinstatement when bricklayer jobs were again available. Plaintiffs allege that this seniority system, agreed to by Local 21, is part of a systematic attempt to exclude Negroes from employment as bricklayers.
 
 
 6
 In April 1966 Waters sought but was not offered reemployment with Harvester. At the same time, Donald Samuels, a member of Local 21, also applied for employment with Harvester as a bricklayer. Samuels, who had not previously worked for Harvester, was denied employment.
 
 
 7
 On May 20, 1966 Waters and Samuels filed charges with the Illinois Fair Employment Practices Commission alleging that Harvester refused to hire them as bricklayers on account of their race. Three days later the same charges were filed with the Equal Employment Opportunity Commission. On February 16, 1967 the EEOC found that no reasonable cause existed to believe that Harvester violated Title VII of the Civil Rights Act.[3]
 
 
 8
 In March 1967 plaintiff Waters petitioned for reconsideration of the EEOC's finding and provided the following additional allegations to support his request. In September 1965 a number of white bricklayers on layoff status elected to receive severance payments. By accepting severance pay under the collective bargaining agreement these bricklayers lost all rights to preferential reinstatement and became eligible for reemployment on the same basis as new employees. Subsequently, on June 15, 1966 Harvester and Local 21 amended their collective bargaining agreement to restore seniority to eight white bricklayers whose seniority had been lost after receiving severance pay. Three of these bricklayers were offered and accepted employment. Restoration of seniority to the remaining five workers relegated plaintiffs to a list further away from recall. As a result plaintiffs alleged that their applications for employment were not given equal consideration and that reemployment of the three white workers and restoration of seniority to all eight bricklayers perpetuated Harvester's continuing policy of hiring only white bricklayers.
 
 
 9
 On June 14, 1967 the EEOC granted Waters' request for reconsideration. On July 10, 1968 the EEOC withdrew its previous decision and issued a new finding that "reasonable cause exists to believe that respondent [Harvester] violated Title VII of the Civil Rights Act of 1964. * * *" On November 29, 1968 the EEOC notified Waters and Samuels that its conciliation efforts with Harvester had failed and provided them with notice of their right to sue.
 
 
 10
 On December 27, 1968 plaintiffs filed their complaint in the district court against Harvester and Local 21. The district court gave numerous grounds for dismissing the complaint. The court held that the Supreme Court's holding in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), could not be extended to create a cause of action for "private" racial discrimination in employment under 42 U.S.C. § 1981. The court further held that even if such a cause of action existed prior to 1964, it was, nevertheless, preempted by the enactment of Title VII of the 1964 Civil Rights Act. Furthermore, the court concluded that any action under section 1981 would be barred by the 120-day filing period of the Illinois Fair Employment Practices Act.
 
 
 11
 The district court disposed of plaintiffs' Title VII count against Local 21 by holding, pursuant to section 706(e) of Title VII, 42 U.S.C. § 2000e-5(e), that Local 21 could not be joined as a defendant since plaintiffs had not previously charged the union with discriminatory practices in a proceeding before the EEOC. The court further held the action against Harvester should also be dismissed since Local 21 and individual white bricklayers could be adversely affected if plaintiffs' action continued, thereby making Local 21 and the bricklayers, parties "needed for just adjudication" under Rule 19, Federal Rules of Civil Procedure.
 
 
 12
 Finally, the court held that the failure of plaintiffs to exhaust the grievance and arbitration procedures under the contract precluded suit under section 301(a) of the Labor-Management Relations Act. In a footnote the court also stated that plaintiffs failed to state a cause of action under the National Labor Relations Act, since exclusive jurisdiction under that Act is vested in the National Labor Relations Board.
 
 
 13
 The central issue in this appeal is whether Local 21 can be sued directly in the district court without previously being charged before the EEOC. If Local 21 is properly a defendant, full relief can be granted and the applicability of Rule 19, Fed.R.Civ.P. need not be considered. We hold that a right to sue under section 1981 for "private" racial discrimination in employment existed prior to 1964. By enacting Title VII of the 1964 Civil Rights Act, Congress did not repeal this right to sue. However, in order to avoid irreconcilable conflicts between the provisions of section 1981 and Title VII, a plaintiff must exhaust his administrative remedies before the EEOC unless he provides a reasonable excuse for his failure to do so. Since we find on the basis of the material before us that plaintiffs have sufficiently justified their failure to charge Local 21 before the EEOC, we hold that the district court erred in dismissing plaintiffs' complaint against the union. Accordingly, we reverse for trial on the merits of plaintiffs' complaint against Local 21 under section 1981 and against Harvester under Title VII.
 
 
 14
 I. The Existence of a Right to Sue Under Section 1981.
 
 
 15
 In Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186 (1968), the Supreme Court was asked to determine the scope and constitutionality of 42 U.S.C. § 1982.[4] In its original form section 1982 was part of section 1 of the Civil Rights Act of 1866.[5] The Court held that section 1 and its derivative, section 1982, prohibit "all racial discrimination, private as well as public, in the sale or rental of property * * *." Jones, supra, at 413, 88 S.Ct., at 2189. The constitutionality of section 1982 was upheld on the basis of Congress' power to enact legislation to enforce the thirteenth amendment.[6]
 
 
 16
 Plaintiffs argue by analogy to the Jones case that 42 U.S.C. § 1981[7] is also derived from section 1 of the Civil Rights Act of 1866; that it is a valid exercise of congressional power under the thirteenth amendment; and that it is intended to prohibit private racial discrimination in employment by companies and unions. We agree.
 
 
 17
 There can be little doubt that section 1981, as well as section 1982, is derived directly from section 1 of the 1866 Civil Rights Act. In this judgment we rest primarily on the views expressed by the Supreme Court in the Jones case. In footnote 78, the Court said that "the right to contract for employment, [is] a right secured by 42 U.S.C. § 1981 (* * * derived from § 1 of the Civil Rights Act of 1866 * * *.)." Jones, supra, at 442, 88 S.Ct., at 2204. This statement is buttressed by further mention of the derivation of section 1981 in footnote 28, Jones, supra, at 422, 88 S.Ct. 2186.
 
 
 18
 The Supreme Court's view of the genesis of section 1981 is also supported by our own analysis. In 1870 Congress reenacted section 1 of the 1866 Act as section 18 of the 1870 Civil Rights Act. As part of the 1870 Act Congress also adopted section 16 which is similar, although somewhat broader, than section 1 of the 1866 Act. For purposes of determining the derivation of section 1981 we believe the enactment of section 16 of the 1870 Act is superfluous since section 18 is sufficiently broad to include the provisions of section 1981. This conclusion is supported by the failure of defendants to present legislative history to demonstrate that Congress intended to narrow the scope of the right "to make and enforce contracts" provision of section 1 of the 1866 Act by the enactment of section 16. In fact, a contrary intent is more likely since Congress by enacting section 16 undoubtedly was attempting to insure that the right to make and enforce contracts without regard to race was supported by the fourteenth as well as the thirteenth amendment.[8]
 
 
 19
 From the discussion in the Jones case, it is also evident that section 1981, as part of section 1 of the 1866 Act, was a valid exercise of Congress' power to enact legislation under the thirteenth amendment. We rest particularly upon the Supreme Court's analysis of Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906). In Hodges a group of white workers were prosecuted under section 1981 for terrorist activities conducted against Negro employees of a saw mill. The Supreme Court reversed the defendants' conviction, holding that section 1981 was not designed to prohibit private acts of discrimination. The Court in Jones examined the decision in Hodges and ruled:
 
 
 20
 The conclusion of the majority in Hodges rested upon a concept of congressional power under the Thirteenth Amendment irreconcilable with the position taken by every member of this Court in the Civil Rights Cases and incompatible with the history and purpose of the Amendment itself. Insofar as Hodges is inconsistent with our holding today, it is hereby overruled. Jones, supra, at 442-443, 88 S.Ct. at 2205 n. 78.[9]
 
 
 21
 Every indicia of congressional intent points to the conclusion that section 1981 was designed to prohibit private job discrimination. The words of the statute, which are almost identical in relevant respects to section 1982, must be construed to extend beyond insuring the bare legal capacity of Negroes to enter into contracts. Thus Congress provided that: "All persons * * * shall have the same right * * * to make and enforce contracts * * * as is enjoyed by white citizens." We are not persuaded that the failure of Congress to expressly mention employment contracts makes section 1981 distinguishable from section 1982. This conclusion is supported by the legislative history of the 1866 Act which demonstrates Congress' intent that section 1 apply to employment contracts. As the Supreme Court noted in Jones:
 
 
 22
 The congressional debates are replete with references to private injustices against Negroes — references to white employers who refused to pay their Negro workers, white planters who agreed among themselves not to hire freed slaves without the permission of their former masters. Jones, supra, at 427, 88 S.Ct., at 2197.
 
 
 23
 As an example of Congress' concern are the words of Representative Windom delivered on the floor of the House:
 
 
 24
 Its object is to secure to a poor, weak class of laborers the right to make contracts for their labor, the power to enforce the payment of their wages, and the means of holding and enjoying the proceeds of their toil. Cong.Globe, 39th Cong., 1st Sess. 1159 (1866).
 
 
 25
 This explanation of the purpose of section 1 of the 1866 Act demonstrates that Congress contemplated a prohibition of racial discrimination in employment which would extend beyond state action.
 
 
 26
 Racial discrimination in employment by unions as well as by employers is barred by section 1981. The relationship between an employee and a union is essentially one of contract. Accordingly, in the performance of its functions as agent for the employees a union cannot discriminate against some of its members on the basis of race.[10] Washington v. Baugh Construction Co., 313 F.Supp. 598 (W.D.Wash.1969); Dobbins v. Local 212, IBEW, 292 F.Supp. 413 (S.D.Ohio 1968).
 
 
 27
 Defendants make several arguments to refute the existence of a cause of action based on private racial discrimination in employment prior to the enactment of Title VII of the 1964 Civil Rights Act. These arguments merit only brief discussion. Defendants maintain that the Jones decision was "foreshadowed" by cases such as Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917), and that, since similar "foreshadowing" is not present under section 1981, the Supreme Court would not extend its ruling in Jones to private discrimination in employment contracts. If, by foreshadowing, the defendants mean that the state action concept has sometimes been employed in a flexible fashion to achieve just results, the cases upon which they rely foreshadow the demise of the requirement of state action under section 1981 as well. Furthermore, it is mistaken to suggest that courts have not used similar means to circumvent the requirement of state action in the area of employment contracts. See Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192, 198-199, 65 S.Ct. 226 (1944).
 
 
 28
 Defendants also argue that the Jones case is distinguishable from the case at bar since property rights have traditionally been subject to greater governmental regulation than other private activity. We disagree. Labor contract relations are subject to governmental regulation nearly as extensive as property rights. Furthermore, we are unclear why defendants' assertion, even if it were true, is relevant in construing section 1981. Finally, defendants maintain that the Jones case should not be given retroactive application. This argument is sufficiently answered by the fact that the Supreme Court has already applied the Jones case retroactively in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).
 
 
 29
 II. Title VII of the Civil Rights Act of 1964
 
 
 30
 A. Did Title VII repeal section 1981 by implication?
 
 
 31
 Having established the existence of a cause of action under section 1981 prior to 1964, we must now ascertain whether Congress, by the enactment of Title VII, intended to repeal the right to bring suit for racial discrimination in employment under the former section. The rules governing this determination have been stated by the Supreme Court in Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936):
 
 
 32
 The amending act just described contains no words of repeal; and if it effected a repeal of section 25 of the 1913 act, it did so by implication only. The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible. There are two well-settled categories of repeals by implication: — (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment.
 
 
 33
 We need concern ourselves only with the doctrine of repeal by implication since Title VII does not provide for express repeal of previous legislation. Furthermore, the second category of repeal by implication noted by the Supreme Court is inapplicable since section 1981 covers rights other than the right to contract for employment.
 
 
 34
 Defendants argue that Title VII was intended by Congress to be a comprehensive scheme to eliminate racial discrimination in employment thereby automatically abolishing all rights previously existing under section 1981. They point first to the fact that Congress in enacting Title VII was unaware of the possibility that aggrieved persons could bring civil suits under section 1981.[11] They would distinguish the Jones case on this basis since the availability of section 1982 was mentioned in debate over Title VIII of the 1968 Civil Rights Act. Jones, supra, at 413-417, 88 S.Ct. 2186. After the recent decision in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S. Ct. 400 (1969), this argument is no longer viable. In Sullivan the Supreme Court held that the right to bring suit under section 1982 was unaffected by the enactment of the Public Accommodations provision of the 1964 Civil Rights Act, even though the legislative history of that Act fails to mention section 1982. Sullivan, supra, at 237, 90 S.Ct. 400. Thus the relevant question for the purpose of determining whether rights under section 1981 were repealed by implication is not whether Congress was aware of section 1981, but whether the legislative history demonstrates that Congress would have intended repeal if it had been aware of preexisting rights under the 1866 Civil Rights Act.
 
 
 35
 Contrary to the assertions of defendants, the legislative history of Title VII strongly demonstrates an intent to preserve previously existing causes of action. Thus Congress rejected by more than a two-to-one margin an amendment by Senator Tower to exclude agencies other than the EEOC from dealing with practices covered by Title VII. 110 Cong. Rec. 13650-52 (1964). Courts have accordingly held that Title VII does not preempt the jurisdiction of the National Labor Relations Board to hear charges of unfair labor practices based on the union's duty of fair representation. United Packinghouse, Food & Allied Workers International Union v. NLRB, 416 F.2d 1126 (D.C.Cir. 1969); Local Union No. 12, United Rubber, etc., Workers of America v. NLRB, 368 F.2d 12 (5th Cir. 1966).
 
 
 36
 Defendants argue, however, that the most important indicia of intent are the provisions established in Title VII itself and that the existence of a cause of action under section 1981 would virtually destroy these provisions. In addition to the availability of immediate access to the courts, they point to large differences in the class of persons covered by Title VII and section 1981 and variations in the substantive prohibitions of the two enactments. We agree that the difficulties in reconciling section 1981 and Title VII are great and that the areas of possible conflict are numerous. Nevertheless, the Posadas case cautions that "the intention * * * to repeal must be clear and manifest" and holds that "effect should be given to both if possible." Thus we cannot conclude that the possibility of conflict demonstrates that section 1981 was wholly repealed by implication.[12] We are convinced that the two acts can, in large measure, be reconciled and effect given to the congressional intent in both enactments. Therefore, we hold that conflicts must be resolved on a case-by-case basis.[13] Accordingly, we turn to section 706(e)[14] to determine whether plaintiffs' cause of action under section 1981 against Local 21 can be reconciled with the "charged party" language of Title VII.
 
 
 37
 
 B. The effect of section 706(e) on the right to bring suit under section 1981.
 
 
 
 38
 Previously in construing section 706 (e) this court has held that: "It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued. 42 U.S.C. § 2000e-5 (e)." Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (1969).
 
 
 39
 Other courts which have considered the question have also held that the "charged party" language of section 706(e) prohibits Title VII suits in the district court against persons not previously charged before the EEOC. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Mickel v. South Carolina Employment Service, 377 F.2d 239 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); Butler v. Local No. 4 & Local No. 269, Laborers' International Union, 308 F.Supp. 528 (N.D.Ill.1969); Cox v. United States Gypsum Co., 284 F.Supp. 74 (N.D.Ind. 1968), modified, 409 F.2d 289 (7th Cir. 1969); Sokolowski v. Swift & Co., 286 F.Supp. 775 (D.Minn.1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967); Moody v. Albermarle Paper Co., 271 F.Supp. 27 (E.D.N.C. 1967). Since these courts were not presented with arguments concerning the existence of a right to sue under section 1981, the cases cited were properly decided. They do not hold, however, that failure to charge a party before the EEOC precludes suit under section 1981. We hold such suits can be reconciled with section 706(e) and continue to exist in a limited class of cases.
 
 
 40
 The language of section 706(e) itself does not compel the conclusion that Congress intended to repeal the right to bring suit directly under section 1981. Even though that section, in discussing access to the courts, concentrates on the situation where an aggrieved party has first proceeded to the EEOC, there is no provision which specifically requires prior recourse before the Commission. Since Congress has expressly prohibited direct access to federal courts in similar situations under other statutes,[15] we hesitate to read section 706(e) as requiring recourse before the EEOC as a jurisdictional prerequisite in all cases.
 
 
 41
 Furthermore, the legislative history of Title VII fails to conclusively demonstrate that section 706(e) was designed to preclude civil suits by aggrieved parties without prior recourse before the EEOC. Although statements by members of Congress from the floor during debate should be viewed with caution,[16] we note the following assertion by Senator Humphrey, proponent and floor manager of the bill: "[T]he individual may proceed in his own right at any time. He may take his complaint to the Commission, he may by-pass the Commission, or he may go directly to court." 110 Cong.Rec. 14 188 (1964).
 
 
 42
 Despite these indications we are convinced that had Congress been aware of the existence of a cause of action under section 1981, the absolute right to sue under that section would have been modified.[17] Throughout the legislative history of Title VII, Congress expressed a strong preference for resolution of disputes by conciliation rather than court action. Conciliation was favored for many reasons. By establishing the EEOC Congress provided an inexpensive and uncomplicated remedy for aggrieved parties, most of whom were poor and unsophisticated. Conciliation also was designed to allow a respondent to rectify or explain his action without the public condemnation resulting from a more formal proceeding. Furthermore, the absence of direct government coercion was thought to lessen the antagonism between parties and to encourage reasonable settlement. The need for voluntary compliance was stressed since more coercive remedies were likely to inflame respondents and encourage them to employ subtle forms of discrimination.[18]
 
 
 43
 Because of the strong emphasis which Congress placed upon conciliation, we do not think that aggrieved persons should be allowed intentionally to by-pass the Commission without good reason. We hold, therefore, that an aggrieved person may sue directly under section 1981 if he pleads a reasonable excuse for his failure to exhaust EEOC remedies. We need not define the full scope of this exception here. Nevertheless, we believe that plaintiffs in the case at bar have presented allegations sufficient to justify their failure to charge Local 21 before the Commission.
 
 
 44
 We rely particularly on the following allegations. The primary charge of racial discrimination made by plaintiffs is based on an amendment of the collective bargaining agreement between Harvester and Local 21. That amendment occurred in June 1966 after plaintiffs filed their charge before the EEOC. Until this amendment plaintiffs were, at least arguably, unaware of the participation of Local 21 in Harvester's alleged policy of racial discrimination. From the affidavits before us, it is evident that Local 21 was aware of the charges against Harvester, and by strong implication against itself, as early as October 1966.[19] Subsequent to this time Local 21 presumably could have rectified any acts of discrimination on its part. Thus Local 21 suffered only slight prejudice from the failure of plaintiffs to charge it before the EEOC.
 
 
 45
 It is inconceivable that Congress would have intended to do away with the right to sue directly under section 1981 in these circumstances. To do so would bind complainants by the four corners of an informal charge and defeat the effective enforcement of the policies underlying Title VII. Cf. Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968). At the administrative stage the charge is usually drafted by laymen untrained in the law. A requirement that the complainant charge every person who may be involved in the alleged acts of discrimination would be unnecessarily harsh.[20] Nor do we believe that the aggrieved party is protected by the right to amend his charge since amendment procedures are generally beyond the competence of layman complainants.[21] To hold otherwise would be to deny effective relief intended by Congress solely on the basis of procedural defects before the Commission.
 
 
 46
 Allowing Local 21 to be sued directly in district court under section 1981 is consistent with the flexible interpretation of the requirement of conciliation recently given by other courts. Actual conciliation or even an attempt at conciliation by the EEOC no longer presents a jurisdictional barrier to filing suit in a district court. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Johnson v. Seaboard Air Line R. R. Co., 405 F.2d 645 (4th Cir. 1968), cert. denied, Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). Moreover, courts have allowed complainants who have not been before the EEOC to join with complainants who have been before the agency as members of a class seeking relief against a common employer. Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). We think these cases demonstrate that the policy in favor of conciliation should not be transformed into a technical device used to obstruct the enforcement of prohibitions against racial discrimination in employment and to deny relief to those Congress has sought to protect.
 
 
 47
 The defendants make one final contention in arguing that the district court was correct in dismissing plaintiffs' claim against Local 21. They urge that plaintiffs' action under section 1981 is barred pursuant to 28 U.S.C. § 1652 and 42 U.S.C. § 1988 by the 120-day filing period for a discrimination claim under the Illinois Fair Employment Practices Act, Ill.Rev.Stat. ch. 48 § 851 et seq., (1967). We disagree. Under those sections the statute of limitations applicable to civil rights actions is controlled by the statute of limitations which governs the most analogous state action. Jones v. Jones, 410 F.2d 365 (7th Cir. 1969). We are not convinced that the Illinois F.E.P.A. is the most analogous state action under these provisions. The Illinois act provides only for an administrative remedy and review of the F.E.P.C.'s findings in the state courts. Different considerations obviously apply to suits by private litigants in courts of law. In contrast to the Illinois F.E.P.A., the entire burden of investigating and developing a case under section 1981 lies with the private litigant. Furthermore, the short limitations period contained in the Illinois act is designed to encourage conciliation and private settlement. When an aggrieved party seeks court relief, conciliation has generally failed. Accordingly, the appropriate limitations period in this case is governed by our recent decision in Baker v. F & F Investment, 420 F.2d 1191 (7 Cir. 1970). That case held that civil actions under section 1982 are subject to the five-year statute of limitations provided in Ill.Rev.Stat. ch. 83 § 16 (1967), governing civil actions not otherwise provided for. Since we see no difference between section 1981 and section 1982 for purposes of determining the appropriate statute of limitations, plaintiffs' action against Local 21 was timely filed.
 
 
 48
 We hold that the district court erred in dismissing plaintiffs' complaint against Local 21. Since the relief available to plaintiffs under section 1981 is potentially as broad as that available in their action against Harvester under Title VII, Sullivan v. Little Hunting Park, Inc., supra, 396 U.S. at 238-240, 90 S.Ct. 400, we need not consider the district court's ruling concerning the applicability of Rule 19, Fed.R.Civ.P.[22]
 
 
 49
 III. Breach of Contract and the Duty of Fair Representation
 
 
 50
 
 A. Action against Harvester under section 301(a)
 
 
 
 51
 Plaintiffs argue that the allegations of their complaint also state a cause of action against Harvester under section 301 (a) of the Labor-Management Relations Act as well as under Title VII.[23] We think plaintiffs misconceive the scope and purpose of section 301(a). Nevertheless, these allegations, if liberally construed, are sufficient to withstand a motion to dismiss under that section. Accordingly, we hold that the district court erred in dismissing plaintiffs' action under section 301(a) and order that their cause of action against Harvester for breach of contract be reconsidered on remand of this case.
 
 
 52
 Section 301(a), unlike Title VII, is not designed primarily as a remedy for racial discrimination in employment. Instead, Congress enacted section 301(a) to provide a means by which collective bargaining agreements could be enforced in federal and state courts. Suits under section 301(a) require plaintiffs to allege specifically which provisions of the collective bargaining agreement have been violated by the employer. Plaintiffs' complaint alleges that the agreement amending the collective bargaining agreement entered into by Local 21 and Harvester in June 1966 violated the seniority provisions of the contract. Since parties to a labor contract are always free to amend their agreements, we do not see how an amendment through the ordinary processes of collective bargaining can be considered a breach of contract. Humphrey v. Moore, 375 U.S. 335, 359, 84 S.Ct. 363, 11 L.Ed.2d 370 (concurring opinion of Mr. Justice Harlan) (1964). Nevertheless, the complaint along with the accompanying affidavits of plaintiff Waters, if broadly construed, may be read to include allegations that plaintiffs were treated in a discriminatory fashion by Harvester in violation of the contract between Local 21 and Harvester. This construction is sufficient to survive a motion to dismiss. Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (Feb. 24, 1970); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On remand plaintiffs should be permitted to amend their complaint to allege with greater specificity which provisions of the collective bargaining agreement were violated by Harvester.
 
 
 53
 To bring an action under section 301(a) an individual employee also must exhaust the grievance provisions of his collective bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). As the Supreme Court held in Vaca v. Sipes, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967):
 
 
 54
 [T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievence.
 
 
 55
 In the instant case the affidavit of plaintiff Waters alleges in very general terms that any attempt to seek redress through the grievance mechanism of the contract would be futile.[24] Harvester argues that plaintiffs cannot prove a breach of the duty of fair representation sufficient to satisfy the exhaustion requirement without at least attempting to put the grievance mechanisms into operation by a demand on union officials. We disagree. Although it may be difficult to establish such proof in this case, we can envision situations in which union representatives repeatedly have breached their duty of fair representation in previous dealings with an employee. In such cases the employee could reasonably believe that attempts to seek the aid of the union in presenting a grievance would be utterly futile, thus justifying his failure to exhaust remedies. Cf. Glover v. St. Louis, San Francisco R. R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). As a result we are unable to say beyond a doubt that plaintiffs' allegations of futility are insufficient to excuse their failure to exhaust the grievance provisions of their contract. Czosek v. O'Mara, supra, 397 U.S. at 25-30, 90 S.Ct. at 772-773. On remand of this case plaintiffs should be allowed to amend their complaint to allege circumstances supporting their assertion that attempts to persuade Local 21 to pursue their grievances would be futile.
 
 
 56
 
 B. Duty of fair representation action against Local 21
 
 
 
 57
 Plaintiffs assert that Local 21 violated its duty of fair representation by participating or at least acquiescing in Harvester's discriminatory hiring policies. They maintain that this breach of duty by Local 21 states a cause of action under section 301(a). Although plaintiffs again read section 301(a) too broadly, we believe that their complaint, if liberally construed, states a cause of action under that section. Therefore, on remand of this case the district court should reconsider plaintiffs' complaint against Local 21 under section 301(a).
 
 
 58
 Plaintiffs are incorrect in arguing that section 301(a) is intended to provide federal jurisdiction for suits seeking relief for violation of the duty of fair representation, Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891 (S.D.Me. 1970). The origin of that duty is statutory, first recognized in cases involving racial discrimination by unions certified as exclusive bargaining agents under the Railway Labor Act. Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1943); Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 120, 65 S. Ct. 235, 89 L.Ed. 187 (1943). The Supreme Court subsequently held that the provisions of the National Labor Relations Act included a similar duty, Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955); rev'g 223 F.2d 739 (5th Cir. 1955); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Suits for breach of statutory duty may be brought under federal question or civil rights jurisdictional provisions. Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3d Cir. 1968); Williams v. Pacific Maritime Assoc., 384 F.2d 935 (9th Cir. 1967).[25]
 
 
 59
 The duty of fair representation has only limited relevance to actions under section 301(a). A union can be joined as a defendant under that section, if by breach of its statutory duty, the union has prevented presentment or enforcement of an employee grievance under the collective bargaining agreement.[26] Vaca v. Sipes, supra, 386 U.S. at 197, 87 S.Ct. 903, n. 18. In such cases a plaintiff-employee can recover only for injury which flows solely from the union's own conduct. As a result plaintiff's recovery against the union is limited in most cases to compensation for the union's failure to timely assert an employee grievance against an employer, Vaca v. Sipes, supra, at 196-198, 87 S.Ct. 903. When viewed in a light most favorable to plaintiffs, we think their complaint makes such an allegation. Accordingly, plaintiffs' cause of action against the union under section 301 (a) should be considered on remand.
 
 
 60
 For the reasons stated, the judgment of the district court is reversed and the cause remanded.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs withdrew their claim under the National Labor Relations Act in the district court. Although the allegation of jurisdiction under that provision has not been stricken from the complaint, it was not reasserted on appeal. We, therefore, deem it to be waivedSee III-B, infra.
 
 
 [2]
 The district court's order of dismissal was not denominated as a summary judgment for the defendants. Nevertheless, affidavits were submitted by both sides and were not excluded by the court. From its memorandum opinion it is evident that the district court considered these affidavits. Moreover, all parties have relied on affidavits to some extent in this appeal. See Fed.R.Civ.P. 12(c)
 
 
 [3]
 On March 8, 1967 Waters and the other bricklayers discharged in September 1964 were offered reemployment. Believing that he had been unsuccessful in his action before the EEOC, Waters accepted employment and worked as a bricklayer from March 20 until May 19, 1967 when he was again discharged. In August 1967 he was again offered employment by Harvester but refused since his petition for reconsideration was then pending before the EEOC
 
 
 [4]
 42 U.S.C. § 1982 reads: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."
 
 
 [5]
 Section 1 of the Civil Rights Act of 1866 provided:
 Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all persons born in the United States and not subject to any foreign power, * * * are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude * * shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding.
 
 
 [6]
 The thirteenth amendment provides:
 Section 1:
 Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
 Section 2:
 Congress shall have power to enforce this article by appropriate legislation.
 
 
 [7]
 42 U.S.C. § 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [8]
 The fourteenth amendment was not adopted until 1868
 
 
 [9]
 See generally A. Larson, New Law of Race Relations, 1969 Wis.L.Rev. 470.
 
 
 [10]
 We need not decide whether an employee possesses rights under § 1981 against the union if he is not a memberSee Steele v. Louisville & N. R.R. Co., 323 U.S. 192, 198-199, 65 S.Ct. 226, 89 L.Ed. 173 (1944).
 
 
 [11]
 They rely especially upon the following statements by Congressman Lindsay:
 The situation in the law as it exists today, without the bill before us having passed, is that any individual can bring an action to invoke the protection of the 14th amendment with respect to a deprivation of a constitutionally protected right.
 In other words, if there is a custom or usage * * * or if there is a practice which has the force of State power behind it, which has State involvement in it, then today an individual may bring action for an injunction. 110 Cong.Rec. 1966 (1964).
 
 
 [12]
 See generally Comment, Racial Discrimination in Employment Under the Civil Rights Act of 1866, 36 U.Chi.L.Rev. 615 (1969).
 
 
 [13]
 We intimate no views concerning the numerous conflicts between § 1981 and Title VII cited by Local 21 and confine our analysis solely to resolution of those conflicts which are before us in this case
 
 
 [14]
 42 U.S.C. § 2000e-5(e) provides in relevant part:
 If within thirty days after a charge is filed with the Commission * * * the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * * by the person claiming to be aggrieved.
 
 
 [15]
 See Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(d), where a civil action by a private person is expressly prohibited unless the Secretary of Labor is given sixty days notice during which time he may attempt conciliation.
 
 
 [16]
 Contrary statements were made by opponents, including Senator Ervin who described the provisions of section 706(e) as follows: "[T]he bill puts the key to the courthouse door in the hands of the Commission." 110 Cong.Rec. 14 188 (1964)
 
 
 [17]
 Our conclusion is not inconsistent with the Supreme Court's holding inJones that the right to proceed directly in federal court under § 1982 is unaffected by the enactment of Title VIII of the 1968 Civil Rights Act, 42 U.S.C. §§ 3601 to 3619. This is true because § 812 of that Act provides an aggrieved party with the alternative of by-passing the Secretary of Housing and Urban Development altogether and proceeding directly in a civil action in the district court. Nor is our decision inconsistent with the Supreme Court's holding in Sullivan that § 1982 was unaffected by the enactment of Title II of the 1964 Civil Rights Act. Section 207(b) of that title contains an express clause saving prior legislation. Sullivan, supra, 396 U.S. at 238, 90 S.Ct. 400.
 
 
 [18]
 See generally M. Sovern, Legal Restraints on Racial Discrimination in Employment (1966); Note Discrimination in Employment and in Housing: Private Enforcement Provisions of the Civil Rights Acts of 1964 and 1968, 82 Harv. L.Rev. 834 (1969).
 
 
 [19]
 We note especially the statements of James W. Quisenberry, an investigator for the EEOC, whose affidavit reads in pertinent part:
 In the regular performance of my official duties, pursuant to an investigation of charges filed May 23, 1966, by William Waters and Donald Samuels against the Wisconsin Steel Works, I twice contacted Edward T. Joyce, President of Local 21, United Order of American Bricklayers and Stone Masons. The first meeting occurred in October 1966; and the second meeting took place on August 8, 1967.
 In October, 1966, during my first meeting with Edward T. Joyce, I informed him fully of the nature of the charges made by William Waters and Donald Samuels. I informed Mr. Joyce that Waters and Samuels claimed that Wisconsin Steel Works had discriminatorily rejected their employment applications of April 3, 1966.
 
 
 [20]
 The harshness of such a requirement is particularly evident in this case. If this action were dismissed against both Harvester and Local 21, plaintiffs would be forced to file new charges before the EEOC. Section 706(d) of Title VII requires that charges be filed within 210 days after the occurrence of the alleged unlawful employment practice. Unless the failure to hire plaintiffs in April 1966 were considered to be a continuing violation, new charges against Harvester and Local 21 would be deemed untimely and plaintiffs would be left without a remedy
 
 
 [21]
 Defendants argue that the burden of amendment should be placed on Commission members under 42 U.S.C. § 2000e-5 (a). We think the fact that the Commission did not attempt to amend plaintiffs' charge in this case demonstrates the inadequacy of such a remedy
 
 
 [22]
 Local 21 adequately represents the interests of absent bricklayers thereby refuting the argument that individual white bricklayers are indispensable parties. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969)
 
 
 [23]
 Section 301(a), 29 U.S.C. § 185(a) (1965), provides in relevant part:
 Suits for violation of contracts between an employer and a labor organization representing employees * * * or between any such labor organizations, may be brought in any district court of the United States.
 
 
 [24]
 Waters' affidavit includes the following statements:
 I have repeatedly called upon the union to represent me and to protect me against racial discrimination in employment.
 Despite my complaints, the union has failed adequately and fairly to represent me in disputes with employers involving racial discrimination.
 * * * * *
 Because Nicholas Popovic is the official through whom I would have to channel any formal complaints * * * and because Local 21 has failed to change its policy of discriminating against black bricklayers, even after receiving numerous complaints from me, I believe that any further attempts to channel my grievances through the union would be futile.
 
 
 [25]
 We do not agree with the district court's conclusion that such suits can only be brought before the National Labor Relations Board. Although the NLRB has assumed jurisdiction and has held that breach of the duty of fair representation constitutes an unfair labor practice under § 8(b) (1) (A), Miranda Fuel Co., 140 N.L.R.B. 181, 185 (1962), enforcement denied, 326 F.2d 172 (2d Cir. 1963); Local Union No. 12, United Rubber, etc., Workers of America v. NLRB, 368 F.2d 12 (5th Cir. 1966), the Supreme Court has held that the NLRB's jurisdiction is not exclusive. Vaca v. Sipes,supra, 386 U.S. at 178-181, 87 S.Ct. 903. Since plaintiffs have waived their claim that their complaint states a cause of action under the National Labor Relations Act, see n. 1, supra, we need not consider the applicability of that Act to the allegations before us.
 
 
 [26]
 Unions also can be joined as defendants if the union is a moving force in producing a violation of the contract by the employer, Vaca v. Sipes,supra, at 197, 87 S.Ct. 903 n. 18. Cf. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 303 (1964). We do not understand plaintiffs to so allege in this case. However, on remand leave should be granted to allow them to make such allegations.
 
 
 
 61
 FAIRCHILD, Circuit Judge (concurring).
 
 
 62
 I concur in reversal and remand for further proceedings against both defendants. I have reached conclusions which differ in some respects from those set forth in Chief Judge Swygert's majority opinion. They are as follows:
 
 
 63
 (1) Plaintiffs' right to proceed against Harvester under Title VII. Plaintiffs allege that Harvester, as an employer, is engaging in what Congress declared an unlawful employment practice. Congress authorized an action for the prevention and redress of such practice, but did not suggest that all parties responsible for the practice or all parties whose interests might be affected by its termination must be joined. In my opinion, Rule 19 (b) F.R.C.P. does not authorize dismissal of an otherwise proper Title VII action against an employer on account of the absence of the union and other employees. Such use of Rule 19 would frustrate the intent of Congress in this type of case.
 
 
 64
 (2) Plaintiffs' Title VII action against the union. Plaintiffs allege that the union was a party to Harvester's collective bargaining agreement, containing allegedly discriminatory seniority lists, and that (after the charges were filed with EEOC) the union agreed to a modification, allegedly for the purpose of permitting a discriminatory reinstatement. Sec. 2000e-2(c) (3) declares it an unlawful employment practice for a union "to cause or attempt to cause an employer to discriminate against an individual in violation of this section." The complaint does not use statutory language, but no argument has been made that it failed to allege an unlawful employment practice on the part of the union.
 
 
 65
 Assuming that the allegation is sufficient, it appears from the complaint that the union was to some degree responsible (in concert with the employer) for the practice of discrimination under attack, acted to further the practice after a charge had been filed against the employer, and had actual notice of the commission's investigation of the charge. Under all the particular circumstances of this case, I conclude that a strict reading of the statutory authorization of an action "against the respondent named in the charge" is unwarranted, and that the plaintiffs could properly bring action against both the employer and the union.
 
 
 66
 EEOC filed an amicus brief in which it argued that in this case plaintiffs could properly have joined the union as a defendant without having named it in the administrative charge. EEOC also suggested a procedure by which the defect, if any, could be cured. Under it, the district court would have stayed the action, pending the filing of a charge by plaintiffs against the union. EEOC could then process the charge so as to allow joinder of the union. Such an approach has been employed in other cases, e. g. Norman v. Missouri Pacific Railroad (8th Cir. 1969), 414 F.2d 73; Local U. No. 329, I.L.A. v. South Atlantic & Gulf Coast Dist. (S.D.Tex. 1968), 295 F.Supp. 599. It seems clear that these steps would obviate any jurisdictional question, but under the facts peculiar to this record, it would seem an unnecessary exercise.
 
 
 67
 (3) Plaintiffs' possible action under § 1981. I agree that, given the Supreme Court's Jones v. Mayer reading of § 1982 with respect to racial discrimination in the sale of property, there is no persuasive reason for reading § 1981 more narrowly with respect to racial discrimination in employment. There remains the difficult question of whether and to what extent the enactment of Title VII restricted reliance upon § 1981. It is unnecessary to resolve that question at this stage if plaintiffs are permitted to proceed against both defendants under Title VII. Perhaps the trial will develop facts which will make resolution important in this case, and I think it wiser not to attempt an answer until that point.