Robert ANDERSON, Jr., et al., Appellants,

v.

ALPHA PORTLAND INDUSTRIES, INC., et al., Appellees.

No. 83–1358.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1983.

Decided Jan. 10, 1984.

Rehearing En Banc Granted Feb. 29, 1984.

---

George S. Hecker, Michael G. Biggers, St. Louis, Mo., for appellees Alpha Portland Industries, Inc. and the Ins. and Health Plan for Hourly Employees of the Alpha Portland Cement Co.; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Sheldon Weinhaus, St. Louis, Mo., for appellants; Levin & Weinhaus, St. Louis, Mo., of counsel.

Before BRIGHT and J.R. GIBSON, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Plaintiffs are former employees of defendant Alpha Portland Industries, Inc. (Alpha). Plaintiffs claim insurance benefits under collective bargaining agreements in effect when they retired. Plaintiffs' action was dismissed below on summary judgment for failure to exhaust contractual remedies. Plaintiffs appeal. We reverse on the ground that plaintiffs are not required to exhaust the contractual remedies.

## I. FACTS

From 1941 to 1982 Alpha was engaged in the cement production business. During this period Alpha operated as many as ten cement plants, including the St. Louis plant at which plaintiffs were employed.

Plaintiffs worked for Alpha under collective bargaining agreements negotiated by the United Cement, Lime and Gypsum Workers (the Union). Plaintiffs retired at various times between 1955 and 1981. All collective bargaining agreements in effect when plaintiffs retired provided life and health insurance for active and retired employees. The collective bargaining agreements referred to a group insurance plan which was embodied in a separate insurance agreement. All collective bargaining agreements in effect when plaintiffs retired also contained grievance and arbitration procedures. These procedures varied during the period in which plaintiffs retired. The latest variation was as follows:

When an employee has a grievance he shall ... make an effort to arrive at a satisfactory settlement with his foreman. Failing to do so, he or his representative may take the matter up with the Plant Manager .... [T]he matter shall then be submitted in writing to the Director of Industrial Relations of the Company. After full consideration and such conferences as may be mutually agreed upon with a representative of the International Union of Cement, Lime and Gypsum Workers, the matter shall be considered settled when the employee's and the Company's representatives have reached an agreement. .... If an agreement cannot be reached in this manner, the matter may by mutual agreement be submitted to arbitration in such manner as shall be acceptable to both parties.

Earlier grievance and arbitration procedures were essentially similar but referred to different management personnel in the grievance procedure. After 1973 the insurance agreements provided that any insurance dispute would be subject to the grievance procedure in the collective bargaining agreement, beginning with step two.

Only one summary plan description of the insurance plan was in evidence below—one effective May 1, 1978. This summary plan description provided alternative procedures to appeal the denial of a claim. According to the summary plan description an appeal could be made through the grievance procedure in the collective bargaining agreement or by filing a written appeal with Alpha's personnel department.

* The HONORABLE WILLIAM C. HANSON, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

As a result of financial problems, Alpha permanently closed its St. Louis plant in December of 1981, and the local union was dissolved. Subsequently, Alpha terminated insurance benefits for retirees.

Without exhausting their contractual remedies, plaintiffs' brought this action under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Plaintiffs claimed a right to insurance benefits for the rest of their lives under the various collective bargaining agreements in effect when they retired.

After plaintiffs' action was filed, Alpha sold its last cement plant and has not operated any cement plants since.

After Alpha had sold its last cement plant, the district court, 558 F.Supp. 913, granted defendants' motion for summary judgment on the ground that plaintiffs had failed to exhaust their contractual remedies.

## II. DISCUSSION

### A. The Exhaustion Requirement.

■ As a general rule, employees claiming rights under a collective bargaining agreement are required to exhaust remedies provided in the collective bargaining agreement before bringing suit against their employer under LMRA § 301, 29 U.S.C. § 185. *Clayton v. UAW*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Warren v. International Brotherhood of Teamsters*, 544 F.2d 334, 337–38 (8th Cir.1976). Other circuits have applied this exhaustion requirement to suits under ERISA § 502, 29 U.S.C. § 1132. *See Kross v. Western Electric Co.*, 701 F.2d 1238, 1244 (7th Cir.1983); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 527–29 (5th Cir.1982) (discussion assumes general exhaustion requirement); *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir.1980); Annot. 54 A.L.R.Fed. 364 (1981). *Cf. Air Line Pilots Ass'n v. Northwest Airlines*, 627 F.2d 272, 275–76 (D.C.Cir. 1980) (Railway Labor Act's arbitration requirement applied to suit to which ERISA and the Railway Labor Act both applied). We are persuaded to require exhaustion under ERISA by the Ninth Circuit's analysis in *Amato v. Bernard*, 618 F.2d 559. Since plaintiffs brought suit under LMRA and ERISA claiming rights under collective bargaining agreements, they are required to exhaust the grievance and arbitration provisions in those agreements, absent some exception to the exhaustion requirement.

### B. Exception to the Exhaustion Requirement.

The exhaustion requirement is subject to exceptions. *Glover v. St. Louis—San Francisco Railway*, 393 U.S. 324, 329–30, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). An exception for the breach of a union's duty of fair representation has been recognized where the union has sole power to proceed with the contractual remedy and has wrongfully refused to proceed with an employee's complaint. *Id.* at 185, 87 S.Ct. at 914. An exception has also been recognized where exhaustion would be futile. *Glover*, 393 U.S. at 330, 89 S.Ct. at 551. One situation in which futility has been found is where it can be anticipated that a union in control of the contractual remedy would breach its duty of fair representation if the employee were required to exhaust. For example, futility has been found where the employee's underlying complaint involves an accusation of wrongdoing against the union, *see Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1345–46 (7th Cir.1978); *Hiller v. Liquor Salesmen's Union Local No. 2*, 338 F.2d 778 (2d Cir.1964); *see also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 511, 513 (9th Cir.1978), and where the union has breached its duty to the employee in previous cases, *see Waters v. Wisconsin Steel Works of International Harvester Co.*, 427 F.2d 476, 489–90 (7th Cir.) *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

■ If an actual or anticipated breach of the duty of fair representation by a union

in control of the contractual remedy is sufficient to excuse exhaustion, then exhaustion should also be excused where the union is in control of the contractual remedy but owes no duty of fair representation to the plaintiff. A plaintiff should not be relegated to a remedy controlled by a party who owes the plaintiff no duty.

In this case the Union is in control of the contractual remedy under the provision of the grievance procedure that a grievance shall be considered settled when Alpha and the Union reach an agreement.

Because plaintiffs are retirees the Union owes them no duty of fair representation.

 A union's duty of fair representation arises from its status as exclusive representative of the employees within the bargaining unit, which deprives individual employees of the ability to deal directly with their employer. *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 2290 n. 14, 76 L.Ed.2d 476 (1983); *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964); *Smith v. Hussmann Refrigerator Co.,* 619 F.2d 1229, 1235 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). Thus the union's duty runs to the employees in the bargaining unit. *Bowen v. United States Postal Service,* —— U.S. ——, 103 S.Ct. 588, 597, 74 L.Ed.2d 402 (1983); *Hussmann,* 619 F.2d at 1235. It follows that the union owes no duty to persons who are not employees in the bargaining unit. This proposition is illustrated by *Cooper v. General Motors,* 651 F.2d 249 (5th Cir.1981). In *Cooper,* prior collective bargaining agreements provided that if an employee left the bargaining unit to become a supervisor and subsequently returned to the bargaining unit, the time spent as a supervisor would count toward the employee's seniority in the unit. A later collective bargaining agreement dropped this provision. Supervisors who were formerly members of the bargaining unit claimed that they had relied on the prior collective bargaining agreements in becoming supervisors and that the union had breached its duty of fair representa-

tion. The court held that the union owed no duty to the supervisors because they were not employees within the bargaining unit, even though the supervisors were formerly within the unit and the union had formerly negotiated benefits for them based on their status as former unit members.

In *Allied Chemical & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the Supreme Court made clear that retirees cannot be employees within a bargaining unit by holding that retirees are not "employees" within the meaning of the collective bargaining obligations of the National Labor Relations Act. The issue in *Allied Chemical* was whether the employer committed an unfair labor practice in dealing directly with retirees concerning their insurance benefits. The Court held that such dealing was not an unfair labor practice because the employer's duty to bargain collectively extended only to mandatory subjects of collective bargaining, that is, to the terms and conditions of employment of employees within the bargaining unit. The Court held that retiree benefits are not mandatory subjects of collective bargaining because retirees are not employees and retiree benefits do not vitally affect employees.

 The Court's decision in *Allied Chemical* placed retirees outside of the bargaining unit and sanctioned direct dealing between employer and retirees. *See Local 134, UAW v. Yard-Man Inc.,* 716 F.2d 1476 at 1484–1486 (6th Cir.1983). It should follow that the union owes no duty of fair representation to retirees since the union's duty runs only to employees within the bargaining unit for whom the union acts as exclusive bargaining representative. The Court recognized this implication of its logic in noting that "since retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer." *Allied Chemical,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20; *see also Yard-Man,* 716 F.2d at 1486 n. 16. However, the *Allied*

*Chemical* noted that a union may bargain for retiree benefits if it chooses to do so—retiree benefits remain a permissive subject of bargaining. *Allied Chemical,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20.

In *UMW Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), the Supreme Court made clear that by choosing to bargain for retiree benefits a union acquires no duty to retirees, at least as to the contents of the agreement ultimately reached with the employer. In *Robinson,* widows of retirees challenged the level of health benefits for retirees' widows provided in a collective bargaining agreement. The Court rejected this challenge stating:

> [F]ormer members and their families may suffer from discrimination in collective-bargaining agreements because the union need not "affirmatively . . . represent [them] or . . . take into account their interests in making bona fide economic decisions in behalf of those whom it does represent." *Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181 n. 20 [92 S.Ct. 383, 398 n. 20].

*Robinson,* 455 U.S. at 574–75, 102 S.Ct. at 1233–34.

Defendants attempt to limit *Allied Chemical* and *Robinson* to the negotiation phase of the collective bargaining process. Defendants argue that if a union actually negotiates a collective bargaining agreement containing retiree benefits, the union then acquires a duty to fairly represent retirees in administering the agreement through such mechanisms as grievance and arbitration. The Supreme Court has recognized a distinction between the union's role in contract negotiations and its role in contract administration. *Allied Chemical,* 404 U.S. at 171 n. 11, 92 S.Ct. at 393 n. 11. Further, it has been held that a union can force an employer to arbitrate disputes concerning retiree benefits. *Local 589, International Ladies' Garment Workers' Union v. Kellwood Co.,* 592 F.2d 1008 (8th Cir.1979); *United Steelworkers v. Canron, Inc.,* 580 F.2d 77, 80–81 (3rd Cir.1978). However, a union could have power to force arbitration over retiree benefits due to the active employees' interest in those benefits and yet owe no duty to fairly represent retirees in arbitration over retiree benefits. In holding that the union may force arbitration over retiree benefits, the Third Circuit noted the Supreme Court's statement in *Allied Chemical* that the union "is under no duty to represent [retirees]." *Canron,* 580 F.2d at 81 n. 6.

The Supreme Court's decisions in *Allied Chemical* and *Robinson* contain broad language implying that a union owes *no* duty of fair representation to retirees, even in administering retiree benefits contained in a collective bargaining agreement. For example, the Court stated in both cases that the union is not required "affirmatively to represent non-bargaining unit members or to take account of their interests in making bona fide economic decisions in behalf of those whom it does represent." *Allied Chemical,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20; *Robinson,* 455 U.S. at 574–75, 102 S.Ct. at 1233–34. In discussing the protection for retirees when a union chooses to bargain for retirees benefits, the Court did not point to any union duty created when the union negotiates retiree benefits, rather the Court pointed to "established contract principles" under which vested rights could not be altered without retirees' consent and to the fact that a retiree "would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed." *Allied Chemical,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20.

In *Robbins v. Prosser's Moving and Storage Co.,* 700 F.2d 433 (8th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983), a majority of this court, sitting *en banc,* interpreted *Allied Chemical* to mean that a union has no duty to fairly represent retirees in administering retiree benefits contained in a collective bargaining agreement. The issue in *Robbins* was whether the trustees of an employee pension fund must exhaust contractual remedies before suing an employer for performance of the employer's obligations to the fund under a

collective bargaining agreement where the dispute involves questions of contract interpretation. This court held that the trustees were not required to exhaust. Part of the court's rationale was that the union would not adequately represent the fund in contractual grievance and arbitration. In making this argument the court stated, "As the Supreme Court has held [in *Allied Chemical*], the union has no affirmative duty to represent those who are no longer members." *Robbins,* 700 F.2d at 442.

 Imposing a duty on unions to fairly represent retirees in contract administration and requiring retirees to exhaust contractual remedies would have consequences that argue strongly for freeing unions of any such duty and excusing retirees from the exhaustion requirement.

As the Supreme Court noted in *Allied Chemical,* forcing a union to represent both active employees and retirees "would create the potential for severe internal conflicts that would impair the [bargaining] unit's ability to function and would disrupt the process of collective bargaining" because active employees and retirees "do not share a community of interest broad enough to justify inclusion of the retirees in the bargaining unit." *Allied Chemical,* 404 U.S. at 173, 92 S.Ct. at 394. The difficulty for the union in representing both active employees and retirees is most apparent in the contract negotiation process. In contract negotiation the conflict of interest between the active employees and the retirees is made clear as the total benefits available from the employer are divided between active employees and retirees. Though the conflict is clearer in the negotiation process, there is also a conflict of interest between active employees and retirees in the contract administration process. In contract administration the union must choose which grievance to pursue with limited resources. More resources spent pursuing retiree grievances means less available for grievances of active employees. Further, a victory for a retiree in a contract administration matter may ultimately be paid for by the active employees. If a retiree victory reduces the employer's assets, there will be less available for future benefits to active employees.

In addition to creating difficulties for the union, the conflict of interest between active employees and retirees also threatens the retirees' interests. The threat is to the retirees' interests, not the active employees' interests, because of the politics of the situation. The union leadership has a political interest in serving the interests of the active employees because the active employees vote in union certification elections and union leadership elections. The union leadership has no political interest in serving the interests of retirees because retirees do not vote in union certification elections and generally do not vote in union leadership elections. *See generally Allied Chemical,* 404 U.S. at 174–75, 92 S.Ct. at 395–96; E. Clauge, B. Palli, L. Kramer, *The Aging Worker and the Union,* 124 (1971). Thus, the politics of the situation dictate that conflicts between the active employees and retirees will be resolved in favor of the active employees.

Imposing a duty on the union to fairly represent retirees would not adequately protect retirees. The Supreme Court noted in *Allied Chemical* that if a union represented both active employees and retirees it could legitimately favor active employees at the expense of retirees. *Allied Chemical,* 404 U.S. at 173 & n. 12, 92 S.Ct. at 394 & n. 12. This is true because a breach of the duty of fair representation occurs only when the union's conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Under this standard there is not necessarily any breach of the union's duty in supporting the position of one group within the bargaining unit against that of another. *Humphrey v. Moore,* 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). This is justifiable where the individuals whose interests are slighted by the union at one point will derive benefits in the future from continued union representation. As the Supreme Court has noted, "The collective bargaining

system ... of necessity subordinates the interests of an individual employee to the collective interests of all employees in the bargaining unit." *Vaca v. Sipes,* 386 U.S. at 182, 87 S.Ct. at 912. However, it would be difficult to justify a union's favoring active employees over retirees in the administration of retiree benefits, given that the union has no duty to negotiate benefits for retirees in future collective bargaining agreements. *UMW Health & Retirement Funds v. Robinson,* 455 U.S. 562, 574–75, 102 S.Ct. 1226, 1233–34, 71 L.Ed.2d 419 (1982).

In this case, the problems generally created by the conflict of interest between active employees and retirees are mitigated by the fact that Alpha no longer has any active employees. However, a conflict of interest still exists. Since the local union has been dissolved, the international union would represent plaintiffs in the contractual grievance and arbitration procedures. Because the international represents the active employees of other employers, the international would face a conflict of interest in allocating its resources between the pursuit of plaintiffs' grievance and the pursuant of benefits for the active employees of other employers.

■ Imposing a duty on unions to fairly represent retirees in contract administration and requiring retirees to exhaust contractual remedies would also hurt the dispute resolution process itself. Even if there is no blanket exception to the exhaustion requirement for retirees, cases involving retirees will frequently raise difficult issues under other, generally applicable exceptions to the exhaustion requirement. Retiree cases will frequently raise issues as to whether the contractual remedy covers retirees, particularly where, as in this case, the contractual remedy is limited to employee grievances. A party can be required to exhaust only if the contractual remedy covers the dispute at issue. *UAW Local No. 125 v. IT & T Corp.,* 508 F.2d 1309, 1313 (8th Cir.1975) ("[A] party cannot be required to submit to arbitration any dispute that he has not agreed to have arbitrated.")

Further, retiree cases will frequently involve an issue as to whether the contractual remedy is available to retirees. In this case, this issue could be raised on two grounds. First, it could be argued that the contractual remedy is not available to retirees because it involves management personnel, such as foreman, who are not readily available to retirees. Second, it could be argued that the contractual remedy is not available to those retirees claiming rights under old collective bargaining agreements that contain grievance and arbitration procedures which have since been changed. Finally, retiree cases will frequently involve an issue as to whether exhaustion should be excused on the ground of futility due to the conflict of interest between retirees and active employees. *Cf. Trustees of Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp.,* 721 F.2d 451, 455 (3rd Cir.1983). Given all these issues, retiree cases would frequently require a mini-trial in federal court to determine whether exhaustion is required. This would defeat one of the purposes of the exhaustion requirement: providing an expeditious remedy. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 249, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199 (1970). It would certainly be more expeditious to recognize a blanket exception from the exhaustion requirement for retirees.

■ Defendants' final argument is that the collective bargaining agreements and insurance agreements require plaintiffs to exhaust the contractual remedies even if the union owes them no duty. As this court noted in *Robbins,* the exhaustion requirement is fundamentally a matter of contract. As a general rule, exhaustion is required or not required as the parties have agreed in the collective bargaining agreement. *Robbins,* 700 F.2d at 442. The parties to a collective bargaining agreement could provide that retirees must exhaust contractual remedies controlled by the union before suing the employer. However, absent a union duty of fair representation to retirees, such a requirement would amount to a provision that the union and the employer have abso-

lute control over retiree benefits at all times. Due to the drastic effect of an exhaustion requirement on retirees, a contractual exhaustion requirement will be found only where it is provided in express words that retirees must exhaust contractual remedies before suing the employer. *See Robbins,* 700 F.2d at 442.

There is no such express provision in this case. Prior to 1973 the only provision submitting any dispute to the grievance and arbitration procedure was the grievance and arbitration provision itself. The grievance and arbitration provision merely provided, "When an employee has a grievance he shall ...." This does not expressly require exhaustion. Further, this provision does not expressly refer to retirees. Indeed, the language "when an employee has a grievance" suggests that the grievance and arbitration procedure is limited to active employees. This suggestion is supported by the structure of the grievance procedure which includes grievances to "his foreman" and the Plant Manager. After 1973, the insurance agreements provided that any insurance dispute would be subject to the grievance procedure in the collective bargaining agreement, beginning with step 2. This provision does not expressly require exhaustion. If the insurance agreements covered only retirees, this reference to the grievance procedure in the insurance agreements would be, in effect, an express reference to retirees. However, both active employees and retirees were covered by the insurance agreements, and the insurance agreements' references to the grievance procedure do not expressly cover retirees. The references to the grievance procedure in the insurance agreements may have been intended to provide only that insurance disputes would be subject to the grievance procedure if otherwise within the grievance procedure, that is, if they constituted grievances by active employees. Finally, the 1978 summary plan description of the insurance plan calls into question whether the parties intended to require exhaustion of the grievance and arbitration procedures in the case of insurance disputes. The summary plan description provided alternative procedures to appeal the denial of a claim: the grievance procedure or a written appeal filed with Alpha's personnel department. Under this provision, the grievance procedure is not an exclusive remedy for insurance disputes, and exhaustion is required only where contractual remedies are exclusive. *Vaca v. Sipes,* 386 U.S. at 184 n. 9, 87 S.Ct. at 913 n. 9. Given the ambiguities as to whether the parties intended to require exhaustion of contractual remedies in the case of retiree insurance disputes, we should not require exhaustion on the ground that the parties required it.

### III. CONCLUSION

The district court's grant of summary judgment is reversed and the case is remanded for further proceedings on the merits.

JOHN R. GIBSON, Circuit Judge, concurring.

I concur in the majority opinion, in part because I believe that *Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433 (8th Cir.1983), a decision of this court sitting en banc, compels that I do so. I joined Judge Henley's dissent in *Robbins,* and am aware that the Supreme Court has granted certiorari in *Robbins.* Any further instruction from the decision of the Supreme Court can be considered by the district court upon the remand we are ordering.

BRIGHT, Circuit Judge, dissenting.

I dissent.

The parties to the collective bargaining agreement and insurance agreement at issue specifically contracted to submit disputes to a grievance and arbitration procedure. Absent some exception to the general rule, employees claiming rights under the collective bargaining agreement must first exhaust exclusive remedies provided in the agreement. *See Clayton v. Automobile Workers,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981). The majority opinion excepts plaintiffs from the exhaustion requirement because, as retirees, the

union owes them no duty of fair representation. Although an exception to the exhaustion requirement may sometimes exist when retirees claim rights under the collective bargaining agreement, *see, e.g., Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433 (8th Cir.) (en banc), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983),[1] I do not believe the exception extends to this case.

Although unions do not have a statutory duty to represent retirees in negotiating a new collective bargaining agreement, they may negotiate for benefits for retirees as a permissive subject of bargaining. *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass,* 404 U.S. 157, 181 n. 20, 92 S.Ct. at 398 n. 20 (1971). In the 1978 collective bargaining agreement, the union bargained for retirees to receive health benefits and life insurance. As part of the agreement, the parties specifically contracted to resolve disputes through a grievance and arbitration procedure. Because the union bargained for benefits for retirees and specifically agreed to submit disputes to the arbitration process, it has a legitimate interest in representing the retirees in arbitration. *Cf. United Steelworkers of America v. Canron, Inc.,* 580 F.2d 77, 80–81 (3d Cir.1978).

The facts of this case can be distinguished from this court's recent decision in *Robbins v. Prosser's Moving & Storage Co., supra,* 700 F.2d at 433, a case relied upon by the majority. Although the *Robbins* court held that pension fund trustees were not bound by the arbitration process because the union owed retirees no duty of fair

representation, it limited the reach of its decision, stating,

> Certainly it is true that arbitration, pension funds, and health and welfare funds, are all matters of contract. They either exist or not as the parties have agreed in the collective-bargaining contract and related documents. If the agreements in the cases before us provided in express words that trustees' claims could not come to court before questions of contract interpretation had been settled by arbitration, this would be quite a different case. *Id.* at 442.[2]

The collective bargaining agreement in the present case does provide for a mandatory grievance and arbitration process to resolve disputes,[3] and the insurance agreement at issue expressly provides,

> Any difference arising under this Program respecting the administration, determination and/or implementation of the Program shall be subject to the grievance procedure established in the Basic Agreement * * *.

Thus, unlike the union in *Robbins,* the union in this case expressly contracted to arbitrate disputes arising under the agreement.

In exempting the plaintiffs from the exhaustion requirement, the majority also relies upon *Allied Chemical Workers, supra,* and *Robbins, supra,* for the proposition that retirees may bypass arbitration procedures when the union owes them no duty of fair representation. In those cases, however, the courts focused in part upon a potential conflict between the interests of retirees and the active employees as a basis for their

---

1. The author of this dissent joined the majority in *Robbins.*

2. The agreement in *Robbins* provided,
 [the] Trustees shall take such steps, including *institution and prosecution of,* and intervention in, any *legal proceedings* that the Trustees in their discretion deem in the best interest of the fund to effectuate the collection or preservation of contributions or other amounts which *may be* owed to the trust fund, without prejudice, however, to the rights of the Union to take whatever steps which may be deemed necessary for such purposes. 700 F.2d at 442 (emphasis supplied).

3. The collective bargaining agreement in this case provides,
 If an agreement cannot be reached in this manner, the matter may by mutual agreement be submitted to arbitration in such manner as shall be acceptable to both parties.
 Despite the permissive "may" in the clause, this court has held that arbitration clauses of this nature are mandatory. *See Bonnot v. Congress of Independent Unions,* 331 F.2d 355, 359–60 (8th Cir.1964) (permissive "may" in arbitration clause merely allows aggrieved party choice of pursuing or abandoning claim).

decisions. The Supreme Court in *Allied Chemical Workers, supra,* stated,

> [T]he risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits. 404 U.S. at 173, 92 S.Ct. at 394.

*See also Robbins, supra,* 700 F.2d at 442.

In this case, however, no potential conflict exists between the interests of retirees and active employees. Alpha Portland Industries has closed all its cement plants and no longer employs any workers. With the potential conflict between retirees and active employees removed, the argument that the union will not live up to its contractual obligation to represent the retirees in arbitration carries no weight.

The district court properly determined that the retirees had failed to exhaust their contractual remedies. Accordingly, I would affirm the district court conditioned upon the district court's retaining jurisdiction in the event that arbitration procedures cannot be carried out. This reservation reflects some question in the record whether arbitration can proceed without the existence of local unions to represent the retirees, and is a question best left to the district court to decide.