**INDEPENDENT LIFT TRUCK BUILDERS UNION,**
Plaintiff,

v.

**HYSTER COMPANY, Defendant.**

No. 92–2166.

United States District Court, C.D. Illinois, Danville Division.

July 31, 1992.

John D. McFetridge Manion, Janov & Devens, Ltd., Danville, Ill., William Widmer, III, Martin P. Barr, Carmell, Charone, Widmer, Mathews & Moss, Chicago, Ill., for plaintiff.

John Jenkins, Gunn & Hickman, Danville, Ill., Verne W. Newcomb, Newcomb Sabin Schwartz & Landsverk, Portland, Or., for defendant.

**1368**

## ORDER

BAKER, District Judge.

The plaintiff, Independent Lift Truck Builders Union ("Union") and the defendant, Hyster Company, are parties to a collective bargaining agreement ("the Agreement"). The Union has sued Hyster to compel Hyster to arbitrate a grievance. According to the Union, Hyster violated the Agreement by unilaterally making changes to its retiree benefits plan. Hyster has moved to dismiss, claiming that it has no duty to arbitrate a grievance concerning benefits for retirees. The Union has moved for a temporary restraining order to enjoin Hyster from discontinuing the retiree's benefits under the old plan and implementing the new plan until the matter is resolved through arbitration. The court will treat the Union's Motion for a Temporary Restraining Order as a Motion for a Preliminary Injunction under Federal Rule of Civil Procedure 65.[1]

### I. *Hyster's Motion to Dismiss*

Prior to January 1, 1992, retirees of Hyster enjoyed health benefits that included dental coverage, prescription drug benefits and vision care benefits. Hyster unilaterally changed the benefits plan for certain retirees, eliminating vision and dental coverage, lowering certain deductibles, and increasing premiums for certain retirees.[2] The Agreement between Hyster and the Union is effective from June 1, 1991 through June 4, 1994. The Union points out that under Article III of the Agreement, "All disputes are subject to arbitration." Article XIX of the Agreement states:

1. The present pension and insurance program shall be continued during the term of the Agreement with no change except as indicated below....

* * * * * *

3. The current Hyster medical plan stays in effect until December 31, 1991. A new Hyster 80/20 comprehensive

Health Plan including Dental, Prescription Drugs, and Vision Coverage as outlined in the new Hyster Health Plan Booklet dated January 1, 1992, becomes effective January 1, 1992.

The Union argues that Hyster's unilateral action of decreasing health benefits for retirees violates Article XIX of the Agreement. The Union also claims that the dispute is ripe for arbitration.

Hyster refuses to submit the dispute to arbitration. It claims that the retirees' grievances are not arbitrable as a matter of law because the Union does not represent retirees and the Agreement does not cover retirees. Hyster also argues that although it provides benefits to retirees, it has no obligation to do so under the Agreement. The Union, on the other hand, argues that even assuming arguendo that there are questions as to whether the Agreement covers retirees, those questions are for an arbitrator to resolve, not the court.

In *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court outlined four basic principles for determining whether a labor dispute is arbitrable. First, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit." *Id.* at 648, 106 S.Ct. at 1418 (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). Second, whether an issue is arbitrable is a question for the court unless the parties have expressly contracted otherwise. *Id.* (Citing *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53.) "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede a judicial determination that the collective bargaining

---

1. The parties agree that this is the correct way to proceed.

2. Hyster claims that its new plan is more beneficial to retirees in other respects. The particular attributes of either plan, however, are irrelevant to whether Hyster has a duty to arbitrate the Union's grievance.

agreement does in fact create such a duty." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964) (cited in *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418). An arbitrator is not empowered to determine his or her own jurisdiction. *AT & T Technologies,* 475 U.S. at 651, 106 S.Ct. at 1419. Third, "[i]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim" that the collective bargaining agreement has been violated. *AT & T. Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418 (citing *American Mfg.,* 363 U.S. at 568, 80 S.Ct. at 1346). Finally, where the collective bargaining agreement contains a broad arbitration clause, there is a presumption of arbitrability, and all doubts in interpreting the contract should be resolved in favor of arbitrability. *Id.* at 650, 106 S.Ct. at 1419.

■ One court noted that "[l]ike any contract, an agreement to arbitrate may be limited in its substantive scope in an almost infinite variety of ways." *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990). In general, courts, not arbitrators, decide whether the subject matter of a dispute falls within the scope of an arbitration agreement. For example, in *Local 106, Service Employees Int'l Union v. Homewood Memorial Gardens, Inc.,* 838 F.2d 958 (7th Cir.1988), the court held that it, rather than an arbitrator, had the authority to decide whether the collective bargaining agreement (and therefore the arbitration clause) had expired. The court reasoned:

> The collective bargaining agreement with its arbitration clause is the sole source of an arbitrator's decision making authority. Therefore, when the existence of an arbitration clause is in dispute then so is the arbitrator's authority. It is illogical to require an arbitrator, and not a court, to determine the arbitrator's authority to act.

*Id.* at 961. In *Chicago Typographical Union v. Chicago. Sun Times,* 860 F.2d 1420 (7th Cir.1988), the court refused to order the defendant to arbitrate with the union when it found that there was no actual "dispute" or "controversy." The Union had sued the company to force it to arbitrate the meaning of a clause in the collective bargaining agreement. However, the court found that the company had not taken a position on the meaning of that clause. Because the arbitration clause in the collective bargaining agreement did not authorize "advisory opinions," but only referred to "controversies" or "disagreements," the arbitrator did not have the authority to resolve the issue. In *Oil, Chemical and Atomic Workers Int'l Union v. Amoco Oil Co.,* 883 F.2d 581, 585 (7th Cir.1989), the portion of the arbitration clause at issue provided "[q]uestions directly involving or arising from applications, interpretations or alleged violations of the terms of arbitrations awards ..." may be referred to arbitration. The court determined that the appellant was not required to arbitrate an issue which the court deemed did not arise from an arbitration award, even though the dispute presented issues similar to those involved in the arbitration award. The court reasoned that the dispute was not within the scope of the arbitration clause. *See also General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse,* 852 F.2d 871, 874 (6th Cir.1988) (dispute not arbitrable where arbitration clause provided that the company was not required to arbitrate where the union did not give notice within fifteen days, and the union had not given notice within the prescribed time).

■ In this case, there is no dispute initially that the court, and not an arbitrator, must decide the question of whether the dispute is arbitrable. In determining whether the dispute is arbitrable, the court finds that this case is distinguishable from cases such as *Homewood Memorial, Chicago Sun Times,* and *Amoco Oil.* In those cases, the disputes, on their faces, did not fall within the arbitration clauses. In this case, the arbitration clause in the Agreement is very broad. It provides that "[a]ll disputes are subject to arbitration." The dispute centers around whether the Union represents retirees as well as current em-

ployees under the Agreement. Resolving the dispute involves interpreting the Agreement and ascertaining whether the parties intended it to cover retirees. Interpreting a collective bargaining agreement is a core function of an arbitrator, and the arbitration clause in this case gives the arbitrator authority to resolve any dispute under the Agreement. The court finds, therefore, that the dispute in this case as to whether Hyster can unilaterally change health benefits for retirees, is arbitrable. The Seventh Circuit has stated in dicta that "[p]rocedural issues including the standing of a party to the arbitration, the res judicata effect of a prior arbitration award and the timeliness of filing a grievance are for the arbitrator so long as the subject matter of the dispute is within the arbitration clause." *Chicago Sun Times*, 860 F.2d at 1424.

■ In order to find that the dispute in this case was not arbitrable, the court essentially would have to rule on the merits of the dispute. The dispute concerns whether Hyster can change the retirees' benefits before the expiration of the Agreement in 1994. That issue turns on whether the retirees are covered under Article XIX of the Agreement. A determination that retirees are not employees represented by the Union and covered by the Agreement would constitute a resolution of that issue. *Warrior Gulf* "cautioned against 'becoming entangled in the construction of the substantive provisions of a labor agreement, even through the back door of an arbitration clause.'" *Warrior & Gulf*, 363 U.S. at 585, 80 S.Ct. at 1354; *Bechtel Construction Inc. v. Laborers' Int'l Union*, 812 F.2d 750, 753 (1st Cir.1987). In addition, there is a strong presumption in favor of the arbitration of labor disputes in order to minimize "industrial strife." *Associated Plumbing & Mechanical Contractors of Sacramento, Inc. v. Local Union No. 447*, 811 F.2d 480, 481 (9th Cir.1987). "An order

to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353; *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419.

The Supreme Court's decision in *Allied Chemical and Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) does not dictate a different result. That case concerned whether the National Labor Relations Act required employers to bargain with retired workers over insurance benefits. The Court held that retirees were not "employees" within the meaning of 29 U.S.C. § 158(a)(5), which makes it an unfair labor practice for a company to refuse to bargain with its employees' representative over mandatory subjects of bargaining. This case, however, does not concern Hyster's duty to bargain with the Union over the retirees' benefits. It concerns whether Hyster agreed to provide retirees with certain benefits and is now breaching that agreement. In a footnote, the Court in *Allied Chemical* stated that:

> [W]hen a union bargains for retirees— which nothing in this opinion precludes if the employer agrees—the retirees are [not] without protection. Under established contract principles, vested retirement rights may not be altered without the pensioner's consent. The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed.[3]

*Id.* at 181 n. 20, 92 S.Ct. at 399 n. 20 (citation omitted). *See also United Steelworkers of America v. Canron, Inc.*, 580 F.2d 77 (3d Cir.1978).[4]

---

3. This defeats Hyster's argument that the court does not have jurisdiction under § 301 of the LMRA to entertain disputes between employers and retirees.

4. The decision of the Seventh Circuit in *Senn v. United Dominion Industries, Inc.*, 951 F.2d 806 (7th Cir.1992) is also inapposite. That case had

nothing to do with arbitration. In *Senn*, the collective bargaining agreement between the union and the company contained a provision for health benefits for retirees. The issue was whether the company was required to continue to provide retirees with benefits upon the termination of the collective bargaining agreement. The court held that the retirees did not have a

Hyster cites Article I, section 1 of the Agreement, which states: "Hyster recognizes the Union as the sole collective bargaining agent for all production and maintenance *employees* at Vermilion County, Illinois...." (emphasis added). Hyster also points out that the heading before Article XIX of the Agreement indicates that section applies to "First Tier Employees and Second Tier Employees." According to Hyster, because the Agreement refers only to "employees," and because *Allied Chemical* held that under the NLRA, retirees were not "employees," retirees are not "employees" under the Agreement, and this dispute over the retirees' benefits is therefore not within the scope of the arbitration clause. The court cannot determine, however, as a matter of law, the meaning the parties attributed to the word "employees." The evidence that Hyster provides in support of its position that the Agreement does not cover retirees—i.e., affidavits of Hyster officers who state that Hyster never recognized the Union as a representative of the retirees; minutes of the bargaining session—is evidence that an arbitrator is better suited than this court to evaluate. Hyster may have a strong argument that the term "employees" does not refer to retired employees. However, Hyster must make that argument to an arbitrator. The court should defer an arbitrable claim to arbitration, without regard to the merits of that claim. *Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co.*, 944 F.2d 1037, 1043 (2d Cir.1991).[5]

The plaintiffs have not moved for summary judgment, but the court finds that as a matter of law, Hyster has a duty to submit the Union's grievance concerning the unilateral amendment of its retiree benefit plan to arbitration. The court therefore grants summary judgment to the plaintiffs *sua sponte.* "A district court may grant summary judgment for a party without a motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond." *Smith v. DeBartoli*, 769 F.2d 451, 452 (7th Cir.1985). *Cf. Peckmann v. Thompson*, 966 F.2d 295 (7th Cir.1992) (entry of summary judgment was improper when it came as a surprise to the adverse party). Both parties in this case have extensively briefed and argued the issue of the arbitrability of the dispute, and as arbitrability is a question of law, it is appropriate to grant summary judgment to the plaintiffs. The court

vested right to lifetime benefits so their benefits terminated when the agreement expired. The court reasoned that absent clear language to the contrary, "entitlements established by collective bargaining agreements do not survive their expiration or modification." *Id.* at 816 (citing *Merk v. Jewel Cos., Inc.*, 848 F.2d 761, 763 (7th Cir. 1988)). In this case, the Union does not dispute that the retirees' entitlement to benefits will terminate upon the termination of the Agreement in 1994. This case concerns whether a dispute about the meaning of the Agreement should be submitted to arbitration. Therefore, the rule in *Senn* requiring the court to look at the plain language of a collective bargaining agreement does not apply.

In *Anderson v. Alpha Portland Indus.*, 727 F.2d 177, 181 (8th Cir.1984), the Eighth Circuit, relying on *Allied Chemical*, stated that retirees were not employees within the bargaining unit. In *Anderson*, the retirees were parties to a collective bargaining agreement which guaranteed them benefits for life. At issue in that case was whether the retirees were required to exhaust all of their administrative remedies under the collective bargaining agreement including submission of the grievance to arbitration before

bringing suit under § 301 of the LMRA. The court held that they did not because the union, which would represent them in arbitration, owed *no duty* to fairly represent the retirees. The court in *Anderson* did recognize that a union could bargain over retiree benefits if it chose to do so and that it could force an employer to arbitrate. *Id.* at 182.

5. One of the issues in *Truck Drivers* was whether one defendant, Newport, was bound by the collective bargaining agreement between the Union and another defendant, Regional. Newport argued that it was not obligated to submit to arbitration because it was not a party to the agreement, while the union argued that Newport was bound by the agreement because it was Regional's alter ego. The circuit court left it to the district court to decide whether Newport was bound by the agreement. *Truck Drivers*, 944 F.2d at 1047. That case is distinguishable from this case, however, because in this case, determining whether retirees are covered under the agreement requires an interpretation of the agreement while in *Truck Drivers*, resolving whether Newport was Regional's alter ego required the application of external legal principles.

will, however, stay the grant of summary judgment for seven days following the receipt of this order to enable Hyster to move for leave to file additional material in opposition to summary judgment if Hyster believes that is necessary.

## II. *The Union's Motion for a Preliminary Injunction*

■ The Union has moved for a preliminary injunction under FRCP 65 to maintain the status quo and force Hyster to continue to offer retirees benefits under the old plan until the dispute is resolved in arbitration. In order to obtain a preliminary injunction, the Union must show: 1) reasonable likelihood of success on the merits; 2) that it has no adequate remedy at law; 3) that it will suffer greater harm if the injunction is not granted than the defendant will suffer if it is; and 4) that the injunction will not harm the public interest. *On/TV of Chicago v. Julien,* 763 F.2d 839 (7th Cir.1985). Because the Norris LaGuardia Act generally prohibits federal courts from issuing injunctions in labor disputes, the standard for obtaining injunctive relief in labor disputes is even higher than the normal standard for injunctive relief. In addition to the factors listed above, the party seeking an injunction preventing an alleged violation of a collective bargaining agreement before the dispute is submitted to arbitration must show that:

the underlying dispute is subject to mandatory arbitration under the labor contract and where an injunction is necessary to prevent arbitration from being rendered a meaningless ritual.

*Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO. v. Panoramic. Corp.,* 668 F.2d 276, 283 (7th Cir.1981). "An injunction in aid of arbitration is appropriate, therefore, only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration." *Id.* at 286.

In *Panoramic,* for example, the Union sought to enjoin the company's sale of a division of the company. According to the union, the sale would have violated the collective bargaining agreement and could have resulted in lost jobs. The Seventh Circuit found that allowing the company to go through with the sale before the dispute went to arbitration would frustrate the purposes of arbitration because

[c]onsummation of the sale before an arbitrator had an opportunity to rule on the Union's contention that the sale violated the labor agreement would have presented the arbitrator with a fait accompli, leaving him without any real power to award an adequate remedy in the event that the Union's claim was sustained.

*Id.; see also Lever Brothers Co. v. International Chemical Workers Union, Local 217,* 554 F.2d 115 (4th Cir.1976).

■ In this case, the Union claims that absent an injunction, many of the retirees that it claims to represent will suffer irreparable harm pending arbitration because they live on fixed incomes and will incur substantial expenses under the new plan. The Union has supplied the affidavit of Ralph Rollins, who claims that his income amounts to approximately $1050 per month and he uses $250 worth of prescription drugs. He states that under the new plan for retirees over age 65, his annual out-of-pocket costs for prescription drugs will equal almost 13% of his income. James Ping states in his affidavit that he receives $8,832 in income per year. Under the new plan, he will be required to pay $2,559 per year for prescription drugs, equalling 26.7% of his annual income. Under the old plan he obtained his medication at no cost through a mail order service. Herb Campbell, who also lives on a fixed income, stated in an affidavit that he will be required to pay more for his prescription drugs under the new plan. Finally, Walter Danner stated in an affidavit that he has decided not to retire because of the reduction in insurance coverage and "uncertainty over the amount of future insurance premiums."

James Phillips, Director of Human Resources at Hyster, states in his affidavit that Mr. Rollins, Mr. Ping and Mr. Campbell actually save money on prescription drugs under the new plan. Phillips points out that the new plan pays retirees over age 65 a maximum of $200 per year for prescription drugs. However, the old plan

had a provision that limited reimbursement for prescription drugs to $600, and although the company had waived that limitation in the past, they would not continue to waive the $600 limitation in the future if they were required to keep the old plan in force. For retirees under age 65, the old plan paid a maximum of $1200 per year for prescription drugs. The new plan pays of all prescription drug costs with a $100 deductible and no limit. *See also* Affidavit of Jan Voorhees, Manager of Human Resources, Hyster–Danville, Exhibit B.

The court finds that the Union has not shown that failure to grant injunctive relief would expose the retirees to the threat of irreparable harm that would render a favorable decision at arbitration a "hollow victory." *Panoramic*, 668 F.2d at 285–86. Courts have held that a complete termination of health benefits could result in irreparable harm. *Local 414 v. Food Marketing Corp.*, 124 L.R.R.M. 2608, 1986 WL 15724 (N.D.Ind.1986); *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir.1979). Although the retirees in this case are not faced with the complete termination of their health benefits, according to the Union, the staggering costs that some of the retirees, who live on fixed incomes, will be forced to pay for prescription drugs will have devastating financial consequences, and may even cause some retirees to give up essential items such as food, or even give up the prescription drugs they need. An injunction, however, is a drastic remedy, especially in the labor context where courts are discouraged from becoming involved in labor disputes. *Independent Oil & Chemical Workers of Quincy v. Procter & Gamble*, 864 F.2d 927, 929 (1st Cir.1988). On one hand, the court finds it hard to believe that the new benefits Hyster provides to retirees are better than the old ones, especially because Hyster, by its own admission, instituted the new plan in order to save money. *See, e.g.*, Affidavit of Ronald Muller at para. 5; Affidavit of Jan Voorhees at para. 5. Evidence supplied by Hyster, however, that under the new plan retirees will not incur drastically increased out-of-pocket expenses, casts doubts on the contentions by the Union that Hyster's new retiree health plan drastically increases the retirees' out-of-pocket health care costs. In addition, this case does not present the type of situation found in *Panoramic*, where arbitration would be completely useless if the company were allowed to proceed with its proposed actions. *See Oil, Chemical and Atomic Workers International Union v. Amoco Oil*, 885 F.2d 697, 708 (10th Cir.1989) (humiliation and invasion of privacy caused by company's drug testing program, as distinguished from economic injury, constitutes the type of irreparable harm that would frustrate the arbitration process and warrant injunctive relief); *International Brotherhood of Teamsters v. Almac's, Inc.*, 894 F.2d 464 (1st Cir.1990) (no irreparable harm from layoffs when arbitrator could order back pay and layoffs). The court is not sufficiently persuaded that the retirees will suffer irreparable harm before the dispute is resolved in arbitration for it to grant injunctive relief.

IT IS THEREFORE ORDERED that the defendant Hyster's Motion to Dismiss (docket # 9) is denied. The court, on its own motion, grants summary judgment in favor of the plaintiffs; however, the court stays the grant of summary judgment for seven days following the receipt of this order to enable Hyster to move for leave to file additional material in opposition to summary judgment if Hyster believes that is necessary.

IT IS FURTHER ORDERED that the plaintiff Union's Motion for a Temporary Restraining Order, which the court construes as a Motion for a Preliminary Injunction (docket # 6) is denied.