[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-10177
_____

D. C. Docket No. 98-00690-CV-J-25A

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 24, 2002
THOMAS K. KAHN
CLERK

DONALD SPENLAU,
individually and as Representative of the class,
G.E. WRIGHT,
individually and as Representative of the class, et al.,

                                        Plaintiffs-Appellants,

versus

CSX TRANSPORTATION, INC.,
UNITED TRANSPORTATION UNION,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 24, 2002)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and MORENO[*],
District Judge.

PER CURIAM:

_____

[*]Honorable Federico A. Moreno, U.S. District Judge for the Southern
District of Florida, sitting by designation.

Appellants, a class consisting of locomotive engineers with retained trainmen[1] seniority rights, appeal the order of the district court granting summary judgment in favor of their employer, Appellee CSX Transportation, Inc. (CSX), and the bargaining representative for trainmen, Appellee United Transportation Union (UTU). We affirm.

## I. BACKGROUND

The material facts underlying this appeal are not in dispute. This case concerns a collective bargaining agreement between CSX and UTU which became effective on July 31, 1992 (the Agreement). The Agreement, like previous collective bargaining agreements, addressed the composition of train crews. Due to technological advances, collective bargaining agreements have consistently reduced the number of trainmen in train service crews over the last several decades. To compensate for the reduction, two funds were established for trainmen which provided extra compensation to those adversely affected by the reduction. One of the goals of CSX in negotiating the Agreement with UTU was the elimination of the two funds. In return for such elimination, while further reducing crew size, the Agreement provided for CSX to buy out the two funds.

---

[1]The trainmen craft includes conductors, brakemen, and switchmen, not engineers.

The buyout program consisted of making two lump sum payments to each eligible employee: $43,000 shortly after the effective date of the Agreement, and $57,500 upon retirement, resignation, dismissal, or death.

At issue during negotiations of the Agreement between CSX and UTU was who would be eligible for the buyout program. UTU sought to include, among other employees, those on the trainmen seniority rosters. Since trainmen on the seniority rosters comprised a significant number of employees, which would greatly increase the cost of the buyout program, CSX sought to exclude them. In the end, the buyout program was available to those who were in "active train service" on the date the Agreement was signed, and to union officials who returned to train service.

Appellants were all locomotive engineers with trainmen seniority rights, none of whom were in "active train service" at the time of the Agreement. While UTU is the exclusive bargaining representative for trainmen, the Brotherhood of Locomotive Engineers (BLE) is the exclusive bargaining representative for locomotive engineers. The locomotive engineer position is generally filled out of the ranks of the conductor or brakeman positions which are part of the trainmen craft. The collective bargaining agreement between CSX and BLE allows CSX to furlough an engineer due to a decline in the need for engineers and to return that

3

engineer to trainmen service until engineers are needed again. Engineers cannot voluntarily return to trainmen service. Under other collective bargaining agreements between CSX and UTU, not at issue here, when a trainman is promoted to engineer, he continues to accrue seniority as a trainman, enabling him to exercise seniority rights should he be furloughed.

Appellants applied for the monetary benefits provided under the Agreement. CSX denied the claims because Appellants were not in active train service on the qualifying date under the Agreement. Appellants then submitted their claims to arbitration. In separate proceedings, two groups of claimants submitted their claims to the National Railroad Adjustment Board. A third group of claimants submitted their claims to Special Board of Adjustment No. 955. All three arbitration proceedings resulted in decisions in favor of CSX. Thereafter, Appellants filed this action in district court, alleging, among other claims, UTU breached its duty of fair representation[2] in failing to secure Appellants inclusion as eligible employees for the buyout program. Upon Appellees' motion, the district court granted summary judgment in favor of CSX and UTU.

---

[2]While the duty of fair representation may only be breached by a union, CSX was included as a defendant in this case on the theory CSX colluded with UTU to breach the duty of fair representation. Having decided UTU owed no duty to Appellants, the district court necessarily concluded there was no collusion with CSX to breach that duty.

On appeal, Appellants contend the district court's grant of summary judgment was inappropriate because the district court failed to appreciate the unique facts of this case requiring the conclusion UTU owed Appellants a duty of fair representation in negotiating the Agreement. Appellants present two arguments to support their position: (1) the trainmen seniority rights retained by Appellants made them members of the bargaining unit for the trainmen craft; and (2) even if Appellants were not members of the bargaining unit, UTU owes a duty to non-members to refrain from arbitrary, discriminatory, and bad-faith acts in negotiating for the trainmen craft. We affirm, without opinion, the district court's ruling on the second argument. *See* 11th Cir. R. 36-1. Only the first argument warrants discussion.

## II. DISCUSSION

We review *de novo* the district court's grant of summary judgment, applying the same standard as the district court. *See Coleman v. Miller*, 117 F.3d 527, 529 (11th Cir. 1997). We view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, here, Appellants. *See St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

5

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A union's statutory duty of fair representation traditionally runs only to members of its collective-bargaining unit, and is coextensive with its statutory authority to act as the exclusive representative for all the employees within the unit." *Schneider Moving & Storage Co. v. Roberts.*, 466 U.S. 364, 376 n.22, 104 S. Ct. 1844, 1851 n.22 (1984) (citations omitted). This duty is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, Administrator*, 386 U.S. 171, 190, 87 S. Ct 903, 916 (1967)(citations omitted). A union's primary objective is to obtain the maximum overall compensation for its members, but this does not mean the union cannot enter into agreements which may have unfavorable effects on some members of the bargaining unit. *Schneider*, 466 U.S. at 376 n.22, 104 S. Ct. at 1851 n.22; *see also Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 203, 65 S. Ct. 226, 232 (1944).

Appellants urge us to recognize UTU owed them a duty of fair representation by virtue of their retention of trainmen seniority rights, even though, as engineers, BLE was their exclusive bargaining representative, and they were

6

not in active service as trainmen at the time of the Agreement. Appellants argue

the unique duality of their situation as engineers with trainmen seniority rights

must be recognized or they are without representation as to their trainmen seniority

rights. In other contexts, our sister circuits have rejected applying the duty of fair

representation to employees outside the bargaining unit. *See, e.g., McTighe v.*

*Mechanics Educ. Soc'y Local 19*, 772 F.2d 210 (6th Cir. 1985) (holding union did

not owe a duty of fair representation to a supervisor, who was also a former

member of the union prior to his promotion)*; Karo v. San Diego Symphony*

*Orchestra Ass'n*, 762 F.2d 819 (9th Cir. 1985) (holding union did not owe union

member a duty of fair representation because the union member was not an

employee); *Anderson v. Alpha Portland Indus. Inc.*, 727 F.2d 177 (8th Cir. 1984)

(holding union did not owe retirees a duty of fair representation); *Cooper v. Gen.*

*Motors Corp.*, 651 F.2d 249 (5th Cir. 1981)[3] (holding union did not owe

supervisors a duty of fair representation, even though the supervisors were

formerly within the bargaining unit and the union had formerly negotiated benefits

for them based on their status as former unit members). Additionally, seniority

rights are not vested rights, but a benefit granted to those outside the bargaining

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

unit, derived from collective bargaining agreements, and subject to modification even to the extent of eliminating such rights entirely. *See Cooper*, 651 F.2d at 250-51.

Nevertheless, at the time of the Agreement, Appellants were engineers and were not of the same class of employees as trainmen. Appellants were governed by the collective bargaining agreement between CSX and their exclusive bargaining representative, BLE. Therefore, UTU owed no duty of fair representation to Appellants.

### III. CONCLUSION

The district court correctly concluded Appellees were entitled to summary judgment.

AFFIRMED.