Julie A. McCORMICK, John F. Minnichoffer, Thomas D. O'Connor, Duanne A. Opitz, Barbara C. Sjostrom, James A. Soshnik, Debra C. Stangler, Jacqueline J. Statz, Tami K. Williamson and Timothy C. Wise, Plaintiffs,

v.

AIRCRAFT MECHANICS FRATERNAL ASSOCIATION, Aircraft Mechanics Fraternal Association Local 33 and Northwest Airlines Corporation, a/k/a Northwest Airlines, Inc., Defendants.

No. CIV.02–611 (PAM/RLE).

United States District Court,
D. Minnesota.

Sept. 30, 2002.

Daniel James Sheran, Robert J. Hennessey, Lindquist & Vennum, Minneapolis, for Julie A. McCormick, John F Minnichoffer, Thomas D. O'Connor, Duane A. Opitz, Barbara C. Sjostrom, James A. Soshnik, Debra C. Stangler, Jacqueline J. Statz, Tami K. Williamson, Timothy C. Wise, plaintiffs.

Nicholas Paul Granath, Seham Seham Meltz & Petersen, Mpls, Lee Seham, Seham Seham Meltz & Petersen, Stanley J. Silverstone, Seham Seham Meltz & Petersen, White Plains, NY, Timothy Robert Thornton, Timothy Gary Gelinske, Briggs & Morgan, Minneapolis, for Aircraft Mechanics Fraternal Association, Local 33 Aircraft Mechanical Fraternal Association, Northwest Airlines Corporation, aka Northwest Airlines, Inc., defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Defendants' Motions for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction.[1] For the reasons that follow, the Court grants the Motions and dismisses Plaintiffs' claims with prejudice.

## BACKGROUND

Until September 2001, Plaintiffs were employed by Defendant Northwest Airlines Corporation, a/k/a Northwest Airlines, Inc. ("Northwest") as stock clerks. Due in part to the economic hardships caused by the events of September 11, 2001, Northwest furloughed Plaintiffs. At that time, Plaintiffs were members of the International Association of Machinists ("IAM") union, the certified collective bargaining representative of the stock clerk employees at Northwest.

Before becoming higher-paid stock clerks, Plaintiffs were cleaners or custodians for Northwest. Prior to May 2001, IAM represented mechanics, cleaners, and custodians at Northwest. After May 2001, however, Defendant Aircraft Mechanics Fraternal Association ("AMFA")[2] became the exclusive representative of mechanics, cleaners, and custodians. Plaintiffs claim that they were represented by AMFA as cleaners or custodians for a short time before they became stock clerks.

The Collective Bargaining Agreement ("CBA") between AMFA and Northwest provides in pertinent part that

> Due to the formerly IAM represented Mechanic and Related employees now being represented by AMFA, effective June 1, 1999, any employee who held seniority in the mechanic, cleaner, or custodian classification on May 11, 2001 but is working outside this agreement in another [Northwest] collective bargaining agreement as of May 11, 2001, will continue to retain but not accrue classification seniority under this agreement for a five (5) year period commencing on date of signing of this Agreement. After five (5) years, such employees will be removed from any seniority under this Agreement. Classification seniority retained under this provision may be used

---

1. Plaintiffs also moved for leave to amend their Complaint. The Court granted this Motion at the oral hearing on this matter. Accordingly, the Court will not further discuss Plaintiffs' Motion.

2. AMFA Local 33 is the local branch of AMFA. AMFA and AMFA Local 33 will be collectively referred to as "AFMA" in this Memorandum and Order.

only in the event that such employee(s) is furloughed from any [Northwest] collective bargaining agreement and wishes to return to a position under this Agreement for which he holds the necessary seniority and qualifications.

(Compl. ¶ 10 (quoting Northwest–AMFA CBA Article 10(D)7).) Plaintiffs aver that they acquired seniority in their cleaner and custodian positions prior to May 11, 2001, and based on this provision in the AMFA–Northwest CBA, they contend that they are entitled to bump back into these positions. Northwest refused to allow Plaintiffs to bump back into their positions as cleaners or custodians, and Plaintiffs filed a grievance. AMFA refused to fully process the grievance. Essentially, Northwest and AMFA interpreted the above provision to mean that Plaintiffs would retain their seniority but not bumping rights to the mechanic, cleaner, or custodian job classifications.

Plaintiffs have now brought the instant action, claiming that: (1) AMFA breached its duty of fair representation to them; (2) Northwest breached the AMFA–Northwest CBA; (3) Plaintiffs are third-party beneficiaries to the AMFA–Northwest CBA; and (4) Northwest and AMFA unlawfully colluded to defeat Plaintiffs' seniority and bumping rights. Plaintiffs also seek a declaration of their rights under the Northwest–AMFA CBA. AMFA argues that it does not owe Plaintiffs any duty of fair representation and therefore that Plaintiffs' claim against it must be dismissed for failure to state a claim upon which relief may be granted. Making essentially the same argument, Northwest contends that Plaintiffs' claims against it must be dismissed for lack of subject matter jurisdiction. Specifically, Northwest argues that, because AMFA does not owe Plaintiffs any duty of fair representation, Plaintiffs cannot avoid preemption of their claims by the Railway Labor Act ("RLA"), 45 U.S.C. § 151a *et seq.*

## DISCUSSION

### A. AMFA's Motion for Judgment on the Pleadings

#### 1. *Standard of Review*

On a motion for judgment on the pleadings pursuant to Rule 12(c), the Court must accept as true the well-pleaded allegations in the complaint and draw all inferences therefrom in favor of the non-moving party. *Lion Oil Co. Inc. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir.1996). Thus, the distinction between a Rule 12(c) motion and a Rule 12(b)(6) motion is purely formal because courts must review all such motions under the same standard. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). In this case, AMFA's Motion will be granted only if"it appears beyond doubt that [Plaintiffs] can prove no set of facts which would entitle [them] to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court should not, however, "blindly accept the legal conclusions drawn by the [Plaintiffs] from the facts." *Morton*, 793 F.2d at 187.

#### 2. *Merits*

District courts have jurisdiction over suits brought by employees against their union for breach of the duty of fair representation. *Hunt v. Mo. Pac. R.R.*, 729 F.2d 578, 580 (8th Cir.1984); *Raus v. Bhd. of Ry. Carmen*, 663 F.2d 791, 796 (8th Cir.1981). "This is true regardless of the fact that the fair representation claim stems from the failure of the union to process a grievance arising out of a violation of the collective bargaining agreement." *Raus*, 663 F.2d at 795. However,

[a] union's duty of fair representation arises from its status as exclusive representative of the employees within the bargaining unit .... Thus the union's

duty runs to the employees in the bargaining unit. It follows that the union owes no duty to persons who are not employees in the bargaining unit. *Anderson v. Alpha Portland Indus., Inc.,* 727 F.2d 177, 181 (8th Cir.1984) (citations omitted). In other words, "exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." *Chavez v. United Food & Commercial Workers Int'l Union,* 779 F.2d 1353, 1356 (8th Cir.1985) (quoting *Kuhn v. Nat'l Ass'n of Letter Carriers Branch 5,* 528 F.2d 767, 770 (8th Cir.1976)); *see also McNamara-Blad v. Ass'n of Prof'l Flight Attendants,* 275 F.3d 1165, 1169 (9th Cir.2002) (same); *Spenlau v. CSX Transp., Inc.,* 279 F.3d 1313, 1316 (11th Cir.2002) (citing cases rejecting the notion that the duty of fair representation applies to employees outside of a union's collective bargaining unit).

In this case, AMFA was not the exclusive bargaining representative of Plaintiffs. Rather, as stock clerks, Plaintiffs' exclusive bargaining representative was IAM. Thus, AMFA owed Plaintiffs no duty of fair representation, and Plaintiffs' claim against AMFA fails to state a claim upon which relief can be granted.

■ Plaintiffs struggle to avoid this conclusion; however, the precise nature of their arguments is difficult to discern. It appears that Plaintiffs argue that because they were members of AMFA when it negotiated Article 10(D)7 of the AMFA–Northwest CBA, AMFA owes them a duty of fair representation. Taking a slightly different tack, Plaintiffs also suggest that, although IAM is their exclusive representative with respect to their rights as stock clerks, AMFA is their exclusive representative with respect to their seniority rights under the AMFA–Northwest CBA. Finally, relying on *Chavez,* Plaintiffs contend that, at the very least, AMFA held itself out as the exclusive bargaining representative for Plaintiffs' seniority rights under

the AMFA–Northwest CBA and thus acquired a duty to fairly represent those rights.

None of these arguments rescues Plaintiffs' claim against AMFA. First, courts have repeatedly rejected the notion that a union has a duty to fairly represent its former members. For instance, the Eighth Circuit determined that a union did not have a duty to fairly represent former members who had retired even though the union had negotiated a collective bargaining agreement providing for retirement benefits. *Anderson,* 727 F.2d at 181. The fact that the retirees had been members of the union when the collective bargaining agreement was negotiated did not affect the court's reasoning or ultimate holding. *Id.* at 179; *see also Cooper v. Gen. Motors Corp.,* 651 F.2d 249 (5th Cir.1981) (holding that a union did not owe supervisors who were former members of the union a duty of fair representation with regard to their seniority rights).

Second, courts have rejected the argument that one union can represent workers for most purposes but another union can represent the same workers with respect to their seniority rights. *Spenlau,* 279 F.3d at 1316. In *Spenlau,* the plaintiffs were locomotive engineers who had been promoted from trainmen and retained trainmen seniority rights. As locomotive engineers, the plaintiffs were exclusively represented by the Brotherhood of Locomotive Engineers ("BLE"). They filed a claim against United Transportation Union ("UTU"), the exclusive bargaining representative for trainmen, alleging that UTU had breached its duty of fair representation to them when it negotiated an agreement that limited certain benefits to trainmen in active service. Apparently realizing that their status as former mem-

bers of UTU was not sufficient to impose a duty of fair representation on UTU, the plaintiffs contended that "the unique duality of their situation" as workers within the BLE exclusive bargaining unit but possessing seniority rights in the class of workers represented UTU needed to be recognized or they would be left without a remedy. *Id.* at 1316. Citing a number of cases from other jurisdictions, including *Anderson,* the court disagreed and held that UTU owed the plaintiffs no duty of fair representation. *Id.*

Finally, Plaintiffs' reliance on *Chavez* is misplaced. In *Chavez,* a union's certification had expired, and the court was faced with deciding "what is sufficient to establish exclusive representative status for purposes of imposing a duty of fair representation" in the absence of certification. *Chavez,* 779 F.2d at 1356. Under the narrow facts of the case, the court reasoned that if a union holds itself out to workers as their exclusive representative with the intent and effect of creating reliance thereon, the union may be considered the workers' exclusive representative. *Id.* at 1357. The *Chavez* court reaffirmed, however, that "exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." *Id.* at 1356 (quoting *Kuhn,* 528 F.2d at 770). Thus, a worker who is exclusively represented by one union cannot reasonably rely on another union for representation. *Id.* at 1357 n. 1. In this case, Plaintiffs were exclusively represented by another union, IAM. Accordingly, even if AMFA held itself out to Plaintiffs as their exclusive representative for some purposes, Plaintiffs could not have reasonably relied on AMFA for such representation. In short, then, AMFA owed Plaintiffs no duty of fair representation, and Plaintiffs' claim against AMFA must be dismissed.

## B. Northwest's Motion to Dismiss for Lack of Subject Matter Jurisdiction

### 1. *Standard of Review*

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). Where, as here, the moving party challenges the complaint on its face, the Court restricts its review to the pleadings and affords the nonmoving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. *See Osborn v. United States,* 918 F.2d 724, 729 n. 6 (8th Cir. 1990). The Court presumes that all of the factual allegations in the Complaint are true and will not dismiss the claims unless Plaintiffs fail to allege an essential element for subject matter jurisdiction. *See Titus,* 4 F.3d at 593.

### 2. *Merits*

 Northwest argues that Plaintiffs' claims against it are preempted by the RLA. The RLA was enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In 1936, the RLA was extended to govern labor relations in the airline industry. *Id.* at 248, 114 S.Ct. 2239. There are two broad categories of disputes under the RLA-major and minor disputes. A minor dispute arises from grievances or the interpretation or application of agreements covering pay rates, rules, or working conditions. 45 U.S.C. § 151a; *Hawaiian Airlines,* 512 U.S. at 252–53, 114 S.Ct. 2239. Major disputes, on the other hand, "relate to 'the formation of collective [hargaining] agreements or efforts to secure them.' "

*Hawaiian Airlines,* 512 U.S. at 252, 114 S.Ct. 2239 (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989)). In other words, "major disputes seek to create contractual rights, [and] minor disputes seek to enforce them." *Id.* (quoting *Consol. Rail Corp.,* 491 U.S. at 302, 109 S.Ct. 2477). If a dispute is characterized as minor, the RLA provides the exclusive means for resolving the dispute, 45 U.S.C. § 184; *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978); *Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent and Clerical Employees,* 187 F.3d 970, 973 (8th Cir.1999).

In this case, there is no question that Plaintiffs' dispute with Northwest is minor because adjudication of Plaintiffs' claims would require that the Court interpret and apply the collective bargaining agreement. *Hogan v. Northwest Airlines, Inc.,* 880 F.Supp. 685, 689 (D.Minn.1995) (Kyle, J.); *Hawaiian Airlines,* 512 U.S. at 263, 114 S.Ct. 2239. Thus, the RLA would normally preempt Plaintiffs' claims. Plaintiffs may avoid preemption under the RLA, however, if their claims constitute a so-called "hybrid" action. To establish a hybrid action, Plaintiffs must make "good faith allegations" and provide "facts supporting those allegations indicating collusion or otherwise tying [Northwest] and [AMFA] together in allegedly arbitrary, discriminatory or bad faith conduct amounting to a breach of the duty of fair representation." *Raus,* 663 F.2d at 798. As an initial matter, then, Plaintiffs must show that they are owed a duty of fair representation by the union. *See Evans v. Northwest Airlines, Inc.,* 29 F.3d 438, 439 n. 2 (8th Cir.1994); *Brown v. Trans World Airlines, Inc.,* 746 F.2d 1354, 1357 (8th Cir.1984) ("However, it is clear that to prevail on any claim against [the airline] plaintiff must first establish unfair representation by the Union.") (citing *Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 329, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969)). Because the Court has already determined that AMFA did not owe Plaintiffs any duty of fair representation, it follows that Plaintiffs cannot establish a hybrid action, and their claims against Northwest are, therefore, preempted by the RLA.

## CONCLUSION

For the foregoing reasons and based on all the files, records, and proceedings herein, the Court finds that AMFA had no duty to fairly represent Plaintiffs. Thus, Plaintiffs' claim against AMFA for a breach of the duty of fair representation must be dismissed, and Plaintiffs' claims against Northwest are preempted by the RLA. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant AMFA's Motion to Dismiss (Clerk Doc. No. 17) is **GRANTED;**

2. Defendant Northwest's Motion to Dismiss (Clerk Doc. No. 15) is **GRANTED;** and

3. Plaintiffs' claims are **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**