RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0101P (6th Cir.)
File Name: 03a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARTHUR ALLEN et al. (01-6073), RANDALL S. BALLARD et al. (01-6074), and JOE K. FANNIN (01-6075), *Plaintiffs-Appellants,*

v.

CSX TRANSPORTATION, INC. and UNITED TRANSPORTATION UNION, *Defendants-Appellees.*

Nos. 01-6073/ 6074/6075

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
Nos. 99-00008; 00-00060; 00-00061—
Joseph M. Hood, District Judge.

Submitted: February 4, 2003

Decided and Filed: April 4, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.[*]

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

### COUNSEL

---

**ON BRIEF:** A. V. Conway II, CONWAY & CONWAY, Hartford, Kentucky, Joseph A. McGee, BUSALD, FUNK & ZEVELY, P.S.C., Florence, Kentucky, for Appellants. Ronald M. Johnson, Michael E. Ferrans, AKIN, GUMP, STRAUSS, HAUER & FELD, Washington, D.C., Kevin C. Brodar, UNITED TRANSPORTATION UNION, Cleveland, Ohio, for Appellees.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. The plaintiffs, all of whom are locomotive engineers, brought three separate suits against their employer, CSX Transportation, Inc. (CSX), and against the United Transportation Union (UTU), which represents trainmen in collective bargaining with CSX. They alleged that UTU had breached its duty of fair representation in reaching a particular collective bargaining agreement with CSX, and that CSX had colluded with UTU to breach that duty. The district court granted the defendants' motions for summary judgment after consolidating the three cases. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Under the Railway Labor Act, railroad employees are classified by their crafts for the purposes of collective bargaining. 45 U.S.C. § 152, Fourth ("The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.") Locomotive engineers constitute

one class.    Conductors and brakemen make up another, collectively known as trainmen.

CSX, the surviving entity resulting from the consolidations of multiple railroad companies, employs both engineers and trainmen. UTU is the exclusive bargaining representative for trainmen employed by CSX. The Brotherhood of Locomotive Engineers (BLE) is the engineers' exclusive bargaining representative.

Engineers are promoted from the ranks of trainmen. An engineer may return to a trainman position only if furloughed as an engineer by CSX; he may not do so voluntarily. By virtue of the collective bargaining agreements, a trainman who becomes an engineer continues to accrue seniority as a trainman in the event that he is ever furloughed.

In 1993, CSX and UTU negotiated an agreement concerning the composition of train crews operating in the territory formerly controlled by the Chesapeake & Ohio Railway Company (C&O). The agreement gave CSX the right to reduce to one the number of trainmen on a C&O crew. In exchange, CSX agreed to pay eligible employees a lump sum of $23,000 and allow them to sell their share of certain previously established funds for an additional $20,000 payment. Eligible employees were defined as those "in active train service as of the signing date of the Agreement." The agreement further provided: "The definition of active train service employee includes employees holding regular or pool assignments, extra lists, Reserve Pool positions, and protected trainmen who are eligible without restriction of any kind to be holding a turn in train service."

## B.    Procedural background

A number of locomotive engineers applied for the $43,000 compensation package established by the 1993 agreement. After CSX denied their claims, they proceeded to arbitration. Most took their claims before the National Railroad

Adjustment Board. One went instead to the Public Law Board. All lost.

In January of 1999, 23 of these engineers filed suit against CSX and UTU in the federal district court for the Eastern District of Kentucky (the *Allen* action). They appealed the adverse arbitration decisions, alleged that UTU had breached its duty of fair representation in reaching the 1993 agreement, and asserted that CSX had colluded with UTU in doing so. In May of 1999, 18 other engineers filed essentially the same lawsuit in the Middle District of Florida (the *Ballard* action). Joe K. Fannin subsequently filed a third action alleging these claims, among others, in the Middle District of Florida (the *Fannin* action).

In February of 2000, the *Ballard* and *Fannin* actions were transferred to the Eastern District of Kentucky. *Allen*, *Ballard*, and *Fannin* were then consolidated for the purposes of discovery and consideration of summary judgment motions. Before the close of discovery, UTU and CSX separately moved for summary judgment. The engineers opposed the motions, both on the merits and because they had not yet completed all of the discovery they desired. Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, they submitted an affidavit by their attorney, setting forth the facts that they hoped yet to discover. The district court, however, granted the motions by CSX and UTU for summary judgment without allowing further discovery, deciding that additional discovery would not alter the court's legal conclusions. These timely appeals followed.

## II.   ANALYSIS

### A.   The district court did not err in deciding that CSX and UTU were entitled to summary judgment

We review the district court's grant of summary judgment de novo. *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

On appeal, the engineers argue that the district court erred in deciding that UTU owed them no duty of fair representation. They first claim that because they have trainmen's seniority rights, they are part of the craft of trainmen, at least with respect to their seniority rights. Alternatively, they contend that even if they are not members of the craft, UTU nevertheless owed them a duty of fair representation. (The engineers do not challenge the district court's award of summary judgment on their arbitration appeals, so that issue is not before us. *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief.").)

### 1.  Claim premised upon a bargaining representative's duty to members of the craft it represents

The Railway Labor Act "impose[s] on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202-03 (1944). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The engineers allege that UTU owed them a duty of fair representation and that it breached that duty in negotiating the 1993 agreement.

Because, as *Vaca* explains, a union breaches its duty only through conduct "toward a member of the collective bargaining unit," the engineers' first hurdle is to articulate why they should be considered members of the craft represented by UTU. They answer by pointing to their retention of trainmen seniority rights, arguing as follows: "Thus, the Plaintiffs' trainmen seniority rights should be within the exclusive province of the UTU, while the Plaintiffs' engineer rights should be within the exclusive province of the BLE." They cite no authority to support this conception of union representation, however, nor are we aware of any.

The statutory language counsels against the engineers' position. Under the Railway Labor Act, "*[e]mployees* shall have the right" to bargain collectively through craft representatives, 45 U.S.C. § 152, Fourth (emphasis added), and the Act defines "employee" to include "every *person* in the service of a carrier. . . ." *id.* § 151, Fifth (emphasis added). The Act thus contemplates that unions represent *people* skilled in a particular craft, not those people's partial rights or interests. Indeed, because collective bargaining with multiple crafts involves the distribution of finite employee benefits among those crafts, a union would face a conflict of interest if it was required to represent not only the members of its own craft, but also certain interests of those belonging to another craft.

Precedent, moreover, weighs against the engineers. In *McTighe v. Mechanics Educational Society of America Local 19*, 772 F.2d 210 (6th Cir. 1985) (per curiam), this court considered whether a mechanics' union owed a duty of fair representation to a supervisor who had been promoted from the ranks of the union members. The supervisor "assert[ed] that the Union had an established past practice of allowing foremen, upon loss of that position, to return to the bargaining unit based on seniority." *Id.* at 212. Such seniority rights, however, were held insufficient to generate a duty of fair representation. The court concluded that

"McTighe, as a supervisor, was not a member of the collective bargaining unit and consequently the Union owed him no duty of fair representation at the time of his termination." *Id.* at 213.

*McTighe* cannot be distinguished, as the engineers urge, on the basis that "McTighe *gave up* his seniority when he was promoted whereas here, the Plaintiffs['] case is based on the fact that they retained theirs." (Emphasis in original) (citation omitted). Although McTighe ceased accruing seniority rights when he became a supervisor, he did not give up the rights that he had previously earned. The collective bargaining agreement at issue in that case specified that when a union member was promoted to a supervisory position, "his/her seniority shall be frozen as of the time of such elevation, . . . and should the employee be returned to a position which is covered by this Agreement, he/she shall pick up the seniority he/she had at the time it was frozen." *McTighe*, 772 F.2d at 212. To characterize the supervisor in *McTighe* as having given up his seniority rights upon promotion is therefore inaccurate.

On the other hand, the *McTighe* decision *is* distinguishable on the basis that the court was concerned that "to impose upon the Union a duty of fair representation would cause a conflict with its duty to represent the workers whom McTighe had been responsible for supervising." *Id.* In contrast, engineers do not supervise trainmen; each has different train-operation duties. The precise conflict of interest that concerned this court in *McTighe* is therefore not present in the instant cases. More generally, however, representing the partial interests of engineers would cause a conflict of interest for UTU because of the general nature of collective bargaining, as explained above. So although *McTighe* does not entirely defeat the engineers' argument, it does counsel strongly against their position.

Another case weighing heavily against the engineers' position is the Eleventh Circuit's recent decision in *Spenlau*

*v. CSX Transportation, Inc.*, 279 F.3d 1313 (11th Cir. 2002) (per curiam). In *Spenlau*, the Eleventh Circuit rejected the engineers' identical argument in separate litigation concerning a different collective bargaining agreement. That court reasoned: "[A]t the time of the Agreement, Appellants were engineers and were not of the same class of employees as trainmen. Appellants were governed by the collective bargaining agreement between CSX and their exclusive bargaining representative, BLE. Therefore, UTU owed no duty of fair representation to Appellants." *Id.* at 1316.

The engineers' contention that UTU is their representative with respect to their trainmen seniority rights also presents a jurisdictional issue that is not discussed by any of the litigants. Under the Railway Labor Act, "[i]f any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board" to resolve the dispute. 45 U.S.C. § 152, Ninth. Jurisdiction over this issue by the National Mediation Board is exclusive. *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 303 (1943) ("The fact that the certificate of the Mediation Board is conclusive is of course no ground for judicial review."); *Bhd. of Maint. of Way Employees v. Grand Trunk W. R.R. Co.*, 961 F.2d 1245, 1248 (6th Cir. 1992) ("The RLA, § 2 Ninth clearly gives the NMB exclusive jurisdiction over '[d]isputes as to the identity of representatives.'").

Moreover, the National Mediation Board has in the past resolved disputes concerning whether certain employees were members of a particular craft, for the purposes of collective bargaining under the Railway Labor Act, based upon factors such as the accrual of seniority. *See, e.g., In re United Airlines*, 18 N.M.B. 181, 183 (1991) ("For the Board to find trainees eligible, the Board must be presented with evidence that the individuals in question have performed line functions in the craft or class as of the cut-off date. Factors such as accrual of seniority and receiving pay and benefits are not

determinative of employee status absent substantive evidence of performance of line work in the craft or class."). Thus, although we need not decide the issue, we observe that the engineers' argument—that, by virtue of their trainmen seniority rights, they are trainmen for the purposes of collective bargaining with respect to those rights—may well be a "[d]ispute[] as to [the] identity of representatives." 45 U.S.C. § 152, Ninth. Such a dispute would be within the exclusive jurisdiction of the National Mediation Board.

### 2.  Claim premised upon a bargaining unit's duty to nonmembers of the craft it represents

Alternatively, the engineers contend that "the law can impose a duty, even to non-members of the bargaining unit; and that the record in this case[] creates genuine issues of material fact as to whether the UTU's actions, together with CSX, were so arbitrary, discriminatory or in bad faith as to prohibit entry of summary judgment." Their principal authority for this proposition is the case of *Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768 (1952). In *Howard*, the union representing the craft of brakemen excluded African Americans as members. The union negotiated a collective bargaining agreement with the railroad that effectively forced the railroad to eliminate the jobs of all train porters, a craft composed predominantly of African Americans, and to replace them with brakemen.

When an African-American train porter challenged the union's conduct, the union argued that it owed no duty of fair representation to people outside of its craft. The Supreme Court rejected the argument, stating:

> Since the Brotherhood has discriminated against 'train porters' instead of minority members of its own 'craft,' it is argued that the Brotherhood owed no duty at all to refrain from using its statutory bargaining power so as to abolish the jobs of the colored porters and drive them from the railroads. We think this argument is unsound

> and that the opinion in the *Steele* case points to a breach of the statutory duty by this Brotherhood. . . . [F]or precisely the same reasons as in the *Steele* case "discriminations based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations."

*Id.* at 773 (quoting *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 203 (1944)).

The engineers encourage us to read *Howard* as imposing a general requirement that collective bargaining representatives may not negotiate preferences for members of their own craft at the expense of nonmembers, or, at the very least, that they may not do so in bad faith. No court, however, has ever read *Howard* as broadly as the engineers propose. In *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790 (2d Cir. 1974), another case relied on by the engineers, the Second Circuit interpreted *Howard* as simply precluding a *per se* rule that a union could never violate its duty to nonmembers of its craft.

The plaintiffs in *Jones* were, in fact, members of the craft represented by the defendant union. *Id.* at 797. They simply were not members of the union. The Second Circuit held that the defendant union had breached its duty of fair representation to the plaintiffs by negotiating a collective bargaining agreement that gave seniority to those members of the craft who were also members of the union and withheld seniority from otherwise identical members of the craft who were not members of the union. *Id.* "*Jones* thus stands for the limited and undisputed proposition that discrimination against non-member employees who are part of the bargaining unit is impermissibly arbitrary if no relevant distinctions exist between the union and non-union employees." *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1016 (3d Cir. 1977).

To the contrary, in a case concerning the relationship of collective bargaining to the insurance benefits of retired employees, the Supreme Court opined as follows:

Since retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer. Nothing in *Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768, 72 S. Ct. 1022, 96 L. Ed. 1283 (1952), is to the contrary. In *Howard* we held that a union may not use the powers accorded it under law for the purposes of racial discrimination even against workers who are not members of the bargaining unit represented by the union. The reach and rationale of *Howard* are a matter of some conjecture. . . . But whatever its theory, the case obviously does not require a union affirmatively to represent non-bargaining unit members or to take into account their interests in making bona fide economic decisions in behalf of those whom it does represent.

*Allied Chem. & Alkali Workers of Am. Local Union No. 1 v. Pittsburgh Plate & Glass Co.*, 404 U.S. 157, 181 n.20 (1971).

The engineers in the present cases have not alleged that UTU negotiated the 1993 agreement in order to force CSX to eliminate the jobs of engineers and replace them with trainmen. All they have argued is that UTU should have "take[n] into account their interests" while the union was negotiating on behalf of trainmen. *Howard*, therefore, has no application to these cases, and the engineers have alleged no facts that would give rise to a claim based upon any duty owed by UTU to those outside of the craft it represents.

In sum, we conclude that UTU owed no duty of fair representation to the engineers. It thus could not have breached that nonexistent duty, nor could it have colluded with CSX in doing so. UTU and CSX were therefore entitled to summary judgment.

**B.  The district court did not err in granting summary judgment before the completion of discovery**

In response to the motions of CSX and UTU for summary judgment, the engineers moved under Rule 56(f) of the Federal Rules of Civil Procedure for additional time to conduct discovery. The district court, however, granted the motions of CSX and UTU without affording the engineers the additional time they requested. We will reverse the denial of a Rule 56(f) motion only if the district court has abused its discretion. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998).

Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). A party who opposes a motion for summary judgment by seeking additional discovery under Rule 56(f), however, "has no absolute right to additional time for discovery. . . . The nonmoving party must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment." *Lewis*, 135 F.3d at 409.

According to the affidavit submitted by the engineers with their Rule 56(f) motion, they sought to "discover information allowing [them] to prove that the terms of the agreement excluding engineers were misrepresented to the membership," as well as "information allowing [them] to show that the defendants colluded to exclude the engineers, or negligently failed to get agreed-to provisions of the agreement incorporated into the final writing." As the district court recognized, however, none of this information has any

bearing on the determinative legal question of whether UTU owed a duty of fair representation to the engineers in the first place.  We therefore conclude that the district court did not abuse its discretion in granting the motions of CSX and UTU for summary judgment without affording the engineers additional time for discovery.

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.